RENTRA LIQUOR DEALERS, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

(No. 56890; ▮▮▮▮▮▮▮

First District—January 22, 1973.

*Rehearing denied February 27, 1973.*

Jerome N. Zurla, of Chicago, (Levin & Novoselsky, of counsel,) for appellant.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

The Department of Revenue of the State of Illinois (herein after the "Department") made corrected assessments of Retailers' Occupation Tax (ROT) and Municipal Retailers' Occupation Tax (MROT) for the following periods in the specified amounts against appellant, Rentra Liquor Dealers, Inc.:

| Exhibit No. | Tax Act | Tax | Penalty | Total |
|---|---|---|---|---|
| 2A | ROT | $2,301.13 | $230.11 | $2,531.24 |
| 2B | MROT | $328.76 | $32.88 | $361.64 |
| 2C | ROT | $6,456.58 | $322.83 | $6,779.41 |
| 2D | MROT | $889.58 | $44.48 | $934.06 |

Exhibits 2A and 2B covered the tax period from January 1, 1965

to June 30, 1965. Exhibits 2C and 2D covered the tax period from July 1, 1965 to October 31, 1967.)

The assessments were reviewed by the circuit court of Cook County which entered an order denying taxpayer the relief requested in its amended complaint and affirming the Department's determination.

Taxpayer then appealed to the Supreme Court pursuant to Rule 302(a)(1). (Ill. Rev. Stat. 1969, ch. 110A, par. 302(a)(1).) The Supreme Court transferred the appeal to this court. (Ill.Sup.Ct. Doc. No. 43231, November Term, 1971).

The taxpayer, Rentra Liquor Dealers, Inc., an Illinois corporation, is located at 8001 South Ashland Avenue, Chicago. The Department corrected the returns of the taxpayer based on "information received from reliable sources" and made the above delineated corrected assessments.

Thereafter, the Department prepared and dispatched to taxpayer its notices of tax liabilities reflecting taxpayer's additional tax liabilities, penalties and interest, based on the amounts set forth hereinabove. Taxpayer protested the notices of tax liabilities and hearings thereon were scheduled.

The original hearing on the notices of tax liabilities was scheduled for July 1, 1968, and again on August 5, 1969, pursuant to notices sent to the taxpayer by certified mail. Because these notices were returned to the Department "not served," another hearing was scheduled for September 10, 1968, and notice thereof was personally served on taxpayer's President, George Artner, on August 22, 1968.

The hearing was conducted by the Department on September 10, 1968, and the Department's *prima facie* case was presented at the scheduled time of 10:00 A.M. The Department was represented by the hearing referee and no one appeared on behalf of the taxpayer. The Department offered and admitted into evidence its Exhibit Numbers 1 through 10 (letter appointing hearing referee, corrections of returns, notices of tax liabilities, taxpayer's protests, and notices of hearings). The Department rested and the case was concluded on a default.

At approximately 11:30 A.M. on September 10, 1968, taxpayer's attorney appeared and the referee again called this matter pursuant to his request. The referee stated for the record that after the Department had admitted into evidence its *prima facie* case, the Department received a telephone call from the taxpayer's attorney requesting a continuance due to the fact that he was in court and detained with another matter at the time this cause was initially heard. No evidence or testimony was presented but taxpayer's attorney represented that the taxpayer had wholesale sales (which would not be subject to taxation) and needed time to secure affidavits. The matter was then continued.

On November 15, 1968, the matter was again heard. Taxpayer appeared by its attorney and by its President, George Artner and the Department appeared by the hearing referee. Taxpayer's attorney objected to the Department's *prima facie* case on numerous grounds including the fact that he was not present when it was introduced and, therefore, could not make objections. A written copy of the transcript and the original of all exhibits were given to the attorney to review. Taxpayer's attorney requested that a new record be made of the *prima facie* case because he was not present. The Department denied this request but offered to allow him to make any objections for the record. Objection was made to Department's Exhibits 2A, 2B, 2C and 2D on the ground that the exhibits were based on "information received from a reliable source" which taxpayer alleged was hearsay and that the Department's representative who prepared the exhibits was not present to be cross-examined. Objection was made to the *prima facie* case since it was based on Exhibits 2A, 2B, 2C and 2D. All objections were overruled by the hearing referee.

Over taxpayer's objection, the taxpayer then proceeded to present its defense to the Department's *prima facie* case. Taxpayer called Father Raymond J. Gerrity as a witness. Father Gerrity testified that from January 1, 1956 to the end of May 1966, that he was assistant pastor of Little Flower Church in Chicago and that he helped the pastor make purchases; that purchases were made from Rentra Liquor Dealers, Inc., every month while he was there. The witness further testified that if any records of purchases were kept, the pastor kept them and that he had died prior to the hearing and the records, if any, were unavailable. Father Gerrity testified that the purchases consisted of alcoholic beverages, soft drinks, cigarettes and wines for "official dinners and cocktails." He did not testify concerning the amounts of the purchases. Taxpayer's President, George Artner on this point, testified that he sold an average of $1,000 per month to Little Flower Church and that he kept these sales on daily sheets but that he had destroyed daily sheets. The referee held that since no evidence was presented to substantiate the amount of the sales to the church, the deduction would not be allowed since only the taxpayer's oral testimony of claimed average monthly sales was presented.

Taxpayer called its President, George Artner, who identified the monthly returns filed for the periods in question. He testified that he kept a daily record of all sales subject to tax and then reported it each month; that he would subtract the sales for resale from the total sales and he only paid tax on and reported the difference. He then destroyed the daily sheets and did not retain any of them. Taxpayer submitted its

Group Exhibit 2 which purported to be monthly ledger sheets and which itemized deposits and refunds which could be allowed as deductions. A miscellaneous column of taxpayers Group Exhibit 2 was itemized which Mr. Artner testified was 50% to 60% newspaper and magazine sales but no evidence was presented to support this testimony.

Taxpayer requested that its Group Exhibit 2 be admitted into evidence for the limited purpose of establishing certain deductions. The referee admitted Group Exhibit 2 into evidence subject to the right of the Department to examine and inspect the Exhibit. Taxpayer objected to the general admission of Group Exhibit 2 and argued that its admission was prejudicial in that the Department did not reveal to the taxpayer the manner in which it arrived at its corrected assessment and also the Department had not formally requested an audit from taxpayer. The referee overruled taxpayer's objection.

Mr. Artner further testified concerning sales for resale (which would not be subject to taxation) but no resale certificate was presented or other evidence to verify this testimony. He testified that all sales not reported to the Department were either sales for resale or sales to Little Flower Church. The referee found that the records of the taxpayer showed gross sales of over 100% more than the amount reported to the Department by taxpayer and averaged over $15,000 more in sales per month. Taxpayer argued that he only had to account for sales at retail to the Department; however, no evidence was presented to show which sales were retail so that the retail sales could be deducted from gross sales and only the retail sales taxed.

A further hearing was held on February 18, 1969, at which time the Department called its auditor, John Taylor to testify concerning his examination of the records presented by the taxpayer. Taxpayer objected that there was no attorney representing the Department and objected to going ahead with the auditor's report on taxpayer's records. These objections were overruled by the referee. The auditor, John Taylor, then proceeded to testify that he examined taxpayer's Group Exhibit 2 and also taxpayer's Internal Revenue Tax returns for the years 1965, 1966, and 1967, which were furnished to him by the taxpayer. He found that deductions for cash refunds and bottle deposits should be made and he deducted these from the gross receipts shown by the exhibits and the Internal Revenue Tax returns; however, this did not reduce the tax liability since the net sales after these deductions still resulted in a higher tax than was presented in the *prima facie* case of the Department. Taxpayer objected to the deductions being made from gross sales and contended these deductions should be made from the Department's *prima facie* case. The referee overruled this objection on the ground that since

the taxpayer has presented its books and records which were the best evidence, the deductions should be made based upon gross sales as reflected in taxpayer's own books and records.

At the conclusion of the hearing before the Department, the referee recommended that the corrected assessments as hereinbefore delineated (Exhibits 2A, 2B, 2C, 2D) be made final in their entirety.

Subsequently, taxpayer filed an amended complaint for administrative review in the circuit court of Cook County. The amended complaint prayed that the decision of the Department be reversed and that the court find no tax liability against taxpayer.

On February 26, 1970, the trial court, after examining the entire record of proceedings before the Department and having heard the arguments of counsel entered an order denying to taxpayer the relief requested in its amended complaint and affirming the Department's determination. Taxpayer appeals from this judgment.

Taxpayer argues on appeal that it was denied a fair hearing in that taxpayer was deprived of the right to be informed of the nature and substance of the charges against it and to cross-examine the person who prepared the corrections of returns and to present evidence on its behalf. Taxpayer also argues that it was denied the right to a hearing before an impartial tribunal.

Ill. Rev. Stat., 1969, ch. 120, par. 443 provides with regards to the examination and correction of returns that:

> "* * * the Department shall examine such return and shall, if necessary, correct such return according to its best judgment and information, which return so corrected by the Department shall be *prima facie* correct and shall be *prima facie* evidence of the correctness of the amount of tax due, as shown therein * * *. (Emphasis added.)

* * *

> Proof of such correction by the Department may be made at any hearing before the Department or in any legal proceeding by a reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. Such reproduced copy shall without further proof, be admitted into evidence before the Department or in any legal proceeding and shall be *prima facie* proof of the correctness of the amount of tax due, as shown therein." (Emphasis added.)

■■■ It is clear from the Statute that the Department was not obligated to produce the person who prepared the corrections of returns for cross-examination. Once the corrections of returns (Exhibits 2A, 2B, 2C,

2D) were admitted into evidence at the hearing, the Department had established its *prima facie* case. Taxpayer was also adequately informed as to the nature and substance of the charges against it. Moreover, contrary to taxpayer's contention, the record clearly establishes that taxpayer was given an opportunity to present evidence on its behalf.

■■ We have examined the record of the hearing afforded taxpayer by the Department and are of the opinion that taxpayer was given a full, fair, and impartial hearing pursuant to the procedural requirement of the Retailers' Occupation Tax Act and the rules of the Department. It is clear from the record that the taxpayer was afforded due process of law.

Taxpayer also contends on appeal that the Department's corrections of returns are not supported by competent evidence.

Under the provision of the Retailers' Occupation Tax Act the proposed assessment and correction of the returns of the taxpayer by the Department is deemed to be *prima facie* correct and evidence of the amount of tax due. (Ill. Rev. Stat. 1969, ch. 120, par. 443.) See also Rules and Regulations of the Department of Revenue, Article No. 7, Rules 1, 2, 3, 4, 5.

Recently, the Illinois Supreme Court reviewed a similar case in *Copilevitz v. Department of Revenue*, 41 Ill.2d 154, 242 N.E.2d 205. In the *Copilevitz* case the taxpayer attempted to reduce a deficiency assessment of taxes on oral testimony and the circuit court permitted such reduction based upon the oral testimony. The Supreme Court reversed and speaking through Mr. Justice Schaefer stated:

> "The taxpayer does not dispute that during the period in question he had receipts of $168,210.82, which he did not report to the Department. The issue is whether he has established that all, or some part, of these unreported receipts, was not subject to the tax. The statute imposes the burden upon the taxpayer to prove by competent evidence that the corrected returns of the Department are not correct and until he makes such proof the corrected returns as made by the Department are presumptively correct.' *DuPage Liquor Store, Inc. v. McKibbin*, 383 Ill. 276, 278—79; see also Ill. Rev. Stat. 1951, chap. 120, par. 443.
>
> To support his contention that the unreported receipts were derived from interstate sales and sales for resale, and so were not subject to the tax, the taxpayer relies upon his oral testimony, and that of his brother, The statute, however, and the Departmental regulations promulgated pursuant to it, compel us to reject this testimony. Section 7 of the Act is explicit in its demand for documentary evidence of purported deductible receipts: 'Every person engaged in the business of selling tangible personal prop-

erty at retail in this State shall keep records and books of all sales of tangible personal property, together with * * * sales records, copies of bills of sale, * * * and other pertinent papers and documents. * * * To support deductions made on the monthly tax return form, or authorized under this Act, * * * on account of receipts from sales of tangible personal property for resale, and on account of receipts from sales of tangible personal property in interstate commerce, entries in any books, records, or other pertinent papers * * * shall be in detail sufficient to show the name and address of each purchaser to whom a sale is made, the character of every such transaction (whether it is a sale for resale, [or] a sale in interstate commerce * * *), the date of every such transaction and the amount of receipts realized from every such transaction.' Ill. Rev. Stat. 1951, chap. 120, par. 446.

During the period in issue, Article 13, Rules 2 and 3, of the Department's Rules and Regulations clearly stated that 'mere statements by sellers that property was sold for resale will not be accepted by the Department without corroborative evidence,' and that when 'sales for resale are made, sellers should, for their protection, take a Certificate of Resale from the purchaser.' Similarly, Article 5, Rule II—3, required the seller 'to retain in his records * * * proof * * * that there was * * * an agreement and a bona fide delivery outside this State * * *. The most acceptable proof of this fact will be * * * a waybill * * *, an authorized receipt from the United States Post Office * * *, a trip sheet * * * *together with* other supporting data as required * * * by Section 7 of the Act.' (Emphasis added.)

We have heretofore held that the statutory recordkeeping provisions are mandatory and that 'before the presumption attached to [the corrected] returns should be declared to have been overcome, there should be some evidence introduced which is identified with books or records as kept by the taxpayer * * *, *DuPage Liquor Store, Inc. v. McKibbin*, 383 Ill. 276, 279; see also *Lutkus v. Department of Finance*, 385 Ill. 221, 223."

■■ In the instant case, taxpayer's oral testimony which lacked sufficient corroborative evidence did not overcome the *prima facie* case of the Department. Taxpayer's contention that the Department's corrections of returns are not supported by competent evidence is without merit.

The tax computed based upon taxpayer's books and records was in excess of the amount of tax liability determined by the Department in

its proposed assessments (Exhibits 2A, 2B, 2C, 2D). The hearing referee stated in his recommendations that:

"The fact that they (referring to the taxpayer's books and records) produced a higher tax than the correction of returns issued by the Department does not give the Department the right to increase the notice of tax liability and so the amount shown on the notice of tax liability must remain as the tax assessment."

■■ In this regard the taxpayer actually received a benefit. As the trial judge aptly stated:

"What is apparent from the record is that taxpayer, indeed, received a benefit because there is no doubt in the mind of this court that the Retailers' Occupation Tax Act in no way prohibits the Department from determining the true and actual amount of tax liability found from the evidence to exist—unrestricted by its initial determination—but to the contrary, that Act contemplates that such be done."

For these reasons the judgment is affirmed.

Judgment affirmed.

GOLDBERG and EGAN, JJ., concur.