(No. 48412.—

GRAND LIQUOR COMPANY, INC., Appellee, v. THE
DEPARTMENT OF REVENUE, Appellant.

*Opinion filed June 1, 1977.—Rehearing denied Oct. 3, 1977.*

WARD, C.J., and UNDERWOOD, J., dissenting.

William J. Scott, Attorney General, of Springfield
(Stephen R. Swofford, of Chicago, of counsel), for
appellant.

Le Roy Winer, of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This case involves the evidentiary effect given to a Department of Revenue estimated tax correction predicated upon a computer printout.

Plaintiff, Grand Liquor Company, Inc., received a final assessment for an alleged tax deficiency due under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*), and the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 24, par. 8—11—1) from the Department of Revenue of the State of Illinois (hereinafter referred to as the Department).

There were four administrative hearings held at which the Department's auditor who corrected the returns was present to answer questions. On examination by the hearing officer the auditor stated that he based his correction on a computer printout which relates to the records on file with the State in Springfield as to payment of the retailers' occupation tax and municipal retailers' occupation tax. On cross-examination by the taxpayer's attorney, the auditor testified that the correction was based on "sales tax returns, monthly filing of these returns, [and] the receipts." He also asserted that an additional 20% fraud penalty was added to the estimated assessment based on the computer results. Pursuant to further questioning, the auditor for the Department acknowledged that he did not know what data were fed into the computer and that the end-result answer was controlled by the computer and measured by the conditions of and basic input to the electronic machine.

The circuit court of Cook County confirmed the Department's assessment. However, the appellate court in *Grand Liquor Co. v. Department of Revenue* (1976), 36 Ill. App. 3d 277, reversed the circuit court and remanded

the cause for a new hearing by the Department, holding that before the Department's correction of the retailers' occupation tax returns based on the computer printout is deemed *prima facie* proof of its correctness pursuant to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 443), the Department must explain the method it employed in reaching the assessment.

Section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 443) provides for the examination and the correction of returns:

> "As soon as practicable after any return is filed, the Department shall examine such return and shall, if necessary, correct such return according to its best judgment and information, which return so corrected by the Department shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due, as shown therein. In correcting transaction by transaction reporting returns provided for in Section 3 of this Act, it shall be permissible for the Department to show a single corrected return figure for any given period of a calendar month instead of having to correct each transaction by transaction return form individually and having to show a corrected return figure for each of such transaction by transaction return forms. In making a correction of transaction by transaction, monthly or quarterly returns covering a period of 6 months or more, it shall be permissible for the Department to show a single corrected return figure for any given 6-month period.
>
> Instead of requiring the person filing such return to file an amended return, the Department may simply notify him of the correction or corrections it has made.
>
> Proof of such correction by the Department may be made at any hearing before the Department or in any legal proceeding by a reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. Such reproduced copy shall without further proof, be admitted into evidence before the Department or in any legal proceeding and shall be *prima facie* proof of the correctness of the amount of tax due, as shown therein." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 120,

par. 443.

Under this Act "[*p*]*roof of such correction* by the Department may be made at any hearing before the Department or in any legal proceeding by a *reproduced copy of the Department's record* relating thereto ***. Such reproduced copy [of the Department's record] shall without further proof, be admitted into evidence before the Department or in any legal proceeding and shall be *prima facie proof* of the *correctness* of the amount of tax due, *as shown therein.*" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 120, par. 443.) Previous to the advent of computer use by the Department in the assessment of tax deficiencies, the corrected returns, deemed to be *prima facie* correct, were products of the Department auditors' personal investigations, computations, and verifications of records, invoices, or other data. At a hearing to challenge the additional tax imposed by the correction, an auditor who corrected the returns, or another personally familiar with the case involved, would be present to answer questions as to the nature of the personal computations of the corrected assessment. *Anderson v. Department of Finance* (1938), 370 Ill. 225; *Copilevitz v. Department of Revenue* (1968), 41 Ill. 2d 154; *Du Page Liquor Store, Inc. v. McKibbin* (1943), 383 Ill. 276; *Novicki v. Department of Finance* (1940), 373 Ill. 342.

The general question raised for the first time before this court is whether, within the meaning of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 443), an estimated tax correction based upon a computer printout should, "without further proof," be accorded *prima facie* evidentiary status as to "the correctness of the amount of tax due."

Under the conventional nonautomated record-keeping method of correction, the taxpayer, confronted with the deficiency under the Retailers' Occupation Tax Act, was afforded the opportunity to cross-examine a department

auditor personally knowledgeable of the source records and accounting method of assessment. The problem we now face is that evidentiary rules must accommodate the automated record-keeping systems of sophisticated technology.

A computer printout is a figure result of electronic data processing: data from written documents is keypunched on cards, then transferred onto magnetic tapes or magnetic disks and processed according to a program consisting of a list of instructions in machine language fed to the computer on cards, tapes or disks.

Three potential sources of error underlie a computer record-keeping, data-processing system: "the input of information by encoding or translating it [source documents] into machine language, the creation of the program which instructs the computer, and the actual mechanical operation of the machine." (Tapper, *Evidence from Computers,* 8 Ga. L. Rev. 562, 566 (1974).) Moreover, "if the information from which the print-out is made has not been accurately compiled the computer's output will be similarly incorrect." (8 Ga. L. Rev. 562, 567.) The latter aspect has been succinctly described in the cybernetics maxim, "garbage in, garbage out." 8 Ga. L. Rev. 562, 567.

Although section 8 of the Retailers' Occupation Tax Act dictates that the conduct of an investigation or hearing shall not be bound by the technical rules of evidence (Ill. Rev. Stat. 1973, ch. 120, par. 447), this court has previously recognized in *Novicki v. Department of Finance* (1940), 373 Ill. 342, that the legislature did not intend this provision to abrogate the fundamental rules of evidence. We asserted further that the rule against hearsay evidence "is founded on the necessity of an opportunity for cross-examination, and is a basic and not a technical rule." 373 Ill. 342, 344.

The record shows that on March 9, 1972, the date of

the first hearing held by the Department of Revenue, in relation to the introduction of the "correction of returns," the following dialogue took place on direct examination between the hearing referee of the Department, and Mr. Carey Blum, an auditor with the Department of Revenue, the only State witness:

"Q. What did you next then do?

A. Because the books and records have not been made available nor has the taxpayer returned my calls, an estimated assessment was set up and a 20 percent civil fraud penalty was added to the liability authorized by Mr. Frank Frioti (phonetic).

Q. What was the basis of your estimated liability?

A. The basis of the estimated liability was on the information given me by the still on a computer print out which states the records on file with the state in Springfield as far as payment of Retailers' Occupation Tax and Municipal Tax.

Q. And what was the estimate you based on those records?

A. The estimate was based on my estimate; that is, records showed one half his assets understated.

Q. And using one half of the assets as reported, you set up a correction return, is that correct?

A. Yes, I did.

Q. Which was the basis for the Notice of Tax Liability?

A. Yes.

MR. JACOBSON: Do you wish to cross-examine?

MR. PHILLIPS: Yes. I now express an objection to their schedule of corrected returns submitted by this witness apparently on the basis that number one, it is not based on the Taxpayer's books and records. Number two, it is not based, I don't believe, upon a showing of the next best evidence other than books and records; and certainly on the basis that it is an opinion and a conjecture of someone from Springfield other than this witness.

THE WITNESS: No, it is a computer print out of the information.

Examination By Mr. Phillips

Q. But you didn't feed the information into the

computer?

A. No, I didn't.

Q. You do not know what information went in?

A. I know what was given to me.

Q. I say again, you do not know what information went in?

A. Yes.

Q. You do know enough about computer statistical reporting to agree with me, I believe, that the end result and the answer that comes back from the computer is controlled and measured by what are the conditions, what are the basics that are fed in?

A. Yes.

Q. And you do not know of your own knowledge what was fed in?

A. Correct."

The record continues:

"MR. PHILLIPS: Let me put it this way, if for some unforeseen reason I cannot get those books and records and then I am stuck with seeing how accurate is this; and I am saying if for some unforeseen reason I am denied and you are denied the right to proceed intelligently with the books and records, then I must determine how reasonable is this, is this conjecture.

MR. JACOBSON: But, I am going to give you the opportunity to bring in the books and records; and I will give you a continued date for the purpose of obtaining the books and records and bring your books and records which would be the sales journal, general ledger, federal income tax reports, substantiation of any claimed nontaxable receipts.

I will give you that opportunity because we have been denied that opportunity up to this date; and as the statute provides, we made out our prima facie case. The burden will now shift to you to offer affirmative evidence, which I am giving you."

It seems clear to us that the State attempted to use the statute to make a *prima facie* case in an attempt to induce the appellant to surrender his books and records in order to arrive at an accurate assessment of the tax he owed. We feel that this was the intention of the legislature

in enacting the statute, but that it was not the intent of the legislature to allow *any* document styled by the Department as a "corrected assessment" to be *"prima facie"* evidence against the taxpayer, especially, as in this case, where the Department's sole evidence lacked any background information on the accuracy of the computer printout. As a result, meaningful examination could not be conducted to determine if the corrected return was in fact based upon the Department's best judgment and information.

The Supreme Court of Mississippi recognized the admissibility of computer evidence when it stated:

> "In sum, we hold that print-out sheets of business records stored on electronic computing equipment are admissible in evidence if relevant and material, without the necessity of identifying, locating and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission." *King v. State ex rel. Murdock Acceptance Corp.* (Miss. 1969), 222 So. 2d 393, 398.

We agree that computer records may be admissible under Supreme Court Rule 236 (58 Ill. 2d R. 236), but we hold that the Department did not sufficiently lay the proper foundation for the introduction of such records upon which the "corrected assessment" was founded, the result being that the Department failed to establish the

*prima facie* evidence of the correctness of the amount of tax due. For the reasons stated, the judgment of the appellate court is affirmed and the cause remanded to the Department of Revenue for a new hearing consistent with the directions expressed here.

*Affirmed and remanded,*
*with directions.*

MR. CHIEF JUSTICE WARD, dissenting:

I fear some will consider the majority's holding places the Department in a faintly ridiculous light. The Department properly and vigorously complains of the contemptuous refusal of the taxpayer to produce its books and records for the Department's examination to determine whether the tax returns were accurate or deliberately falsified or simply erroneous. The majority ignores this unexplained and what appears to be significant failure of the taxpayer and criticizes the Department for what the majority says was a faulty method of advising the taxpayer of what tax it should have paid. The books and records in the taxpayer's possession are obviously the best source of this information to determine the tax due, and this was pointed out by the hearing officer. I would hold that the taxpayer under the circumstances should not be heard to make the complaint the majority sustains.

The recalcitrance of the taxpayer is shown clearly by the record. At the hearing on May 9, 1972, Mr. Blum, the Department's auditor who had reviewed Grand Liquor's returns, testified that on September 7, 1971, he first communicated with Michael DeCarlo, the president of Grand Liquor, concerning the audit and that DeCarlo told him he would make the company's books and records available for examination. On September 14 DeCarlo's accountant called Blum and informed him he had not been able to obtain the records. On September 28 the accountant again called Blum and informed him that DeCarlo had

not brought in the books and records. After several unsuccessful attempts Blum communicated with DeCarlo in the first week of November 1971. DeCarlo stated he had been ill and would produce the records. Two weeks later, when the records had not been given to the Department, Blum made the estimated assessment.

At the first hearing, on May 9, 1972, the taxpayer's attorney stated he would do everything he could to make the books and records available to the Department and a continuance was granted to June 8, 1972, on this representation. (This was after Blum had testified that DeCarlo had assured him months before that the books and records would be made available.)

The hearing was again continued on June 8, 1972, when the books were not produced. The taxpayer's attorney again stated that arrangements would be made to produce them for the Department and, on this representation, the file was referred by the referee to the Department's audit section.

On February 8, 1973, another hearing was held at which no one appeared in behalf of the taxpayer. Blum testified he had spoken again with DeCarlo in early September of 1972. DeCarlo stated that he had been out of the country and that he would make the books and records available by the end of the month, *i.e.,* September 1972. The records were never produced and another estimated assessment was made. At the conclusion of this hearing, at which no one appeared for the taxpayer, the assessment was made final by reason of default. However, the Department consented by stipulation that there would be another hearing, and on February 20, 1973, another hearing was held. The taxpayer's attorney then charged that the tax, by reason of its various classifications, was unconstitutional. This argument was overruled by the hearing referee. The allegation of unconstitutionality was thereafter abandoned.

The holding today will encourage the belief that the Department's requests for the production of books and records may be ignored with impunity and may severely handicap its collection process.

MR. JUSTICE UNDERWOOD, also dissenting:

It seems to me the court has ignored the clearly expressed intent and meaning of section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 443). That section provides that the corrected return "shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due ***. Such reproduced copy [of the Department's record relating to the corrected return] shall without further proof, be admitted into evidence *** and shall be prima facie proof of the correctness of the amount of tax due ***." This case, where the taxpayer has, despite continued assurances to the contrary, failed to produce any books or records over a period of 14 months and four hearings, is an example of the difficulties faced by the Department in determining the correct tax in cases where taxpayers deliberately frustrate any attempt to correct what the Department believes to be either erroneous or intentionally falsified returns.

The statute clearly states that the Department's record and the corrected return, *without further proof,* shall be admitted into evidence and constitute *prima facie* proof of the amount of tax due. There is no requirement that a corrected return be based upon information which is admissible into evidence (*Du Page Liquor Store, Inc. v. McKibbin* (1943), 383 Ill. 276, 280), and the taxpayer has the burden of producing evidence to overcome the *prima facie* case (*Fillichio v. Department of Revenue* (1958), 15 Ill. 2d 327, 333; *Novicki v. Department of Finance* (1940), 373 Ill. 342, 345). The Department is not required to produce its records upon which a corrected return is based

where the taxpayer presents no evidence to overcome the *prima facie* correctness of the return. (*Tatz v. Department of Finance* (1945), 391 Ill. 131, 134-35.) A corrected return based on "information received from a reliable source" establishes a *prima facie* case for the Department, and "[i]t is clear from the Statute that the Department was not obligated to produce the person who prepared the corrections of returns for cross-examination. Once the corrections of returns *** were admitted into evidence at the hearing, the Department had established its *prima facie* case." *Rentra Liquor Dealers, Inc. v. Department of Revenue* (1973), 9 Ill. App. 3d 1063, 1066, 1068-69.

Despite this consistent precedent that a corrected return is deemed to be *prima facie* proof of the Department's case, the majority opinion now holds that a corrected return based on information received from a computer printout is not *prima facie* evidence unless a proper foundation has been laid for it. This, it seems to me, is simply not consistent with the statutory direction that the corrected return shall be admissible and constitute *prima facie* evidence of the tax due "without further proof."

The court's opinion states, apparently in an effort to justify the result, that prior to the advent of computer use, auditors conducted personal investigations and were available for cross-examination at the hearing. There is, of course, no such statutory requirement, even though the practice may be a desirable one; and this record indicates that the investigations which were attempted were fruitless because the taxpayer's books and records were never made available to the auditor. His visits to the business premises of the taxpayer were unsuccessful, and his telephone calls equally so.

A corrected return can at best only be an estimate where the taxpayer, as in this case, refuses to cooperate. Until this opinion, the Department established a *prima*

*facie* case when it introduced a copy of its record and corrected return. In the absence of constitutional prohibitions (and none are argued here) which invalidate application of this statutory procedure to computer printouts, this court should not amend that statute to require a different procedure. The effect of this decision, it seems to me, will be to shift the focus of the hearing from determining the correct tax to determining the propriety of the Department's preparation of the corrected return.

I would reverse the judgment of the appellate court and affirm the circuit court of Cook County, which upheld the Department's assessment.