FILIPPO PULEO, *et al.*, d/b/a La Roma Pizza, Plaintiffs-Appellees and Cross-Appellants, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District    No. 4—83—0051

Opinion filed August 16, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellants.

Wayne R. Golomb, of Springfield, for appellees.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The Department of Revenue (Department) conducted an audit of the plaintiff's business and as a result thereof issued corrected State and municipal retailers' occupational tax returns. Two notices of tax liability followed, one for the period April 1, 1976, through December 31, 1976, during which Rosolino and Filippo Puleo were doing business as a copartnership under the name of La Roma Pizza. The second was for the period January 1, 1977, through April 30, 1979, during which Rosolino Puleo conducted the business as a sole proprietorship. Both notices included interest and a fraud penalty. Timely protests were filed and a series of hearings were held by the Department. It was stipulated that the evidence taken would apply to both assessments.

At the conclusion of the hearings the Department issued final assessments which included interest and a fraud penalty. Plaintiffs, Filippo and Rosolino Puleo, filed a complaint for an administrative review in the circuit court of Sangamon County. In due course plaintiffs filed a motion for summary judgment and the Department filed objections thereto. Both parties filed extensive briefs with the trial court, which reversed the assessments. For reasons which are unclear the court also remanded the case. The Department has appealed, and the plaintiffs have cross-appealed. We reverse the order of the circuit court and affirm the assessments.

A tangled procedural problem presents itself at the outset. The Department has filed a motion to strike the major portion of a reply brief filed by the plaintiffs as cross-appellants. We have taken the motion with the case and now allow it.

Plaintiffs' position as a cross-appellant is somewhat tenuous. They obtained complete relief at the trial level—the assessments were reversed. Their motion for summary judgment on which the trial court's order was based alleged a single ground: that the Department's assessment was based upon hearsay evidence. Nonetheless, in briefing the matter before the trial court, plaintiffs raised a variety of other reasons for the purported invalidity of the assessments. The trial court's order of reversal was specific; it reversed on the ground of hearsay only; and the Department's brief is confined to this subject and to the fraud penalty. However, plaintiffs' brief, as appellees, raises and argues the same additional reasons for affirming the trial court as appeared in their trial brief, and the Department in its reply brief has answered them. Plaintiffs then filed a reply brief as cross-appellants, which is the subject of the motion.

We question the authority of plaintiffs to cross-appeal. Their motion for summary judgment was limited as was the order of the circuit court thereon. The only indication of the other issues is the presence of the trial brief, which we assume was considered by the trial court in making its decision. If plaintiffs desired that these matters be properly preserved, it was their burden to make the proper motion in the circuit court under section 3—111(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 3—111(c)).

However, the Department has not moved to strike the cross-appeal and asks only that the major portion of plaintiffs' reply brief be stricken. This is the only relief sought and the only relief which may be granted without our proceeding *sua sponte*, something which we decline to do, since it is our obligation to examine the total proceedings before the Department. We do suggest a more meticulous attention to procedural detail.

A brief summary of the evidence presented before the Department's hearing officer follows. A revenue auditor visited plaintiffs' place of business for the purpose of audit. Books and records of the business were not available, and plaintiff Rosolino Puleo informed him that they were in Chicago, the business being located in Canton, Illinois, and its principal object being the sale at retail of pizza and soft beverages. The auditor then used a reconstruction method to determine sales. He obtained information from six of plaintiff's suppliers showing plaintiff's purchases from them for the years 1976, 1977, 1978, and January through April 1979. He also examined plaintiff's monthly retailers' occupation tax returns for the same period. By comparing the two he found it apparent that the purchases totaled more than the receipts for the period. He was advised by the Department to apply a factor of 36% as the cost of sales. These projected sales were then offset by sales reported by the plaintiffs and the difference yielded the tax deficiency. He recommended a fraud penalty because the purchasers exceeded what was reported as sales. He also testified that he preferred to work from books and records and if they were available at the time of hearing, even then he would consider them.

At a second hearing a revenue fraud agent testified that he visited the plaintiff Rosolino Puleo together with another agent in February 1979 and learned that there were no books or records; he therefore requested an audit. After it was completed, he and the other agent again visited the plaintiff, who then told him that he did not keep a record of sales; that at the end of the month he would estimate sales and give the figure to the bookkeeper. He admitted to the

revenue fraud agents that prior to the audit he had not filed correct tax returns; that he knew he had not been furnishing actual sales and knew that he was understating and underreporting purchases and sales. The agents offered him a statement to sign; he stated that everything in the statement was correct but he would not sign until he had talked with his attorney.

The agent further testified that he had obtained data from other pizza companies concerning their cost of sales; that Heritage House Enterprises, which owns several pizza places throughout the State, stated it to be 35-40%; that he had computed it for Pizza Hut Corporation and found it to be 27.24%. He also identified an exhibit which was the record of plaintiff's plea of guilty to filing fraudulent retailers' occupation tax returns and for which he received one years' probation and a fine of $1,000.

Plaintiff testified before the hearing officer that he understood the purpose of the fraud agent's visit was to determine if his brother were still in business with him. He stated that he had a bookkeeper who never told him what records were required to be kept and that the agent did not seem interested in seeing the records in Chicago. He further stated that the agent on the second visit told him the amount of tax which he owed and that he desired to see his lawyer; he denied that he stated that the statement offered to him was accurate. He also claimed that he pleaded guilty to the criminal charge because of the expense of contesting the matter, and he believed that his cost of goods sold was higher than the 36%; that it was 45-47% at the time of the hearing and even higher during the audit period. He testified that there were records in Chicago but that they were only purchase records; that he had no sales records because the bookkeeper did not tell him to keep sales receipts and he thought they were wastepaper.

The hearing officer recommended that the final assessments and the fraud penalty not be reduced; he found that during almost all the period in question purchases exceeded receipts and that reported receipts rose dramatically following the fraud agent's visit; he also found that the factor of 36% had been objected to by the plaintiff, but plaintiff was unable to offer any better method of fixing the cost of sales. He concluded that the Department had prepared the audit according to its best judgment and information as required by section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 443); that the 36% factor met the statutory requirement since the taxpayer had no books and records for audit, any sales records having been destroyed and any purchase records supposedly being in Chicago

but never presented.

With regard to the fraud penalty, the statement of the hearing officer is instructive:

> "[E]xcept for the short audit year of 1979, the Taxpayer reported sales for each audit year which were several thousand dollars less than his purchases as found by the Department's investigation of his suppliers. I note that in the short audit period in the year 1979, his reported sales increased following a visit from the Department's Fraud Agent, Scheller. The Taxpayer is a man unaccustomed to American business procedures, however, under penalties of perjury he did sign Retailer's Occupation Tax Returns which understated his tax liability month after month. The Taxpayer did plead guilty to filing fraudulent Retailer's Occupation Tax Returns for the period of February 1978 through April of 1979. Two Department of Revenue Fraud Agents testified that Mr. Puleo had admitted to them that he had not filed correct Retailer's Occupation Tax Returns."

The hearing officer concluded that the Department had established fraud by clear and convincing evidence and that the plaintiff had filed inaccurate returns knowing full well that he had no provable documentation to back up the figures.

As had been indicated, plaintiffs filed for administrative review in the circuit court. That court reversed the final assessments, holding that the final assessments were based upon hearsay evidence and not in accordance with the law under the rationale of *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238.

On appeal the Department raises two issues: (1) whether the circuit court erred in its application of *Grand Liquor*, and, (2) whether the fraud penalty was properly imposed.

In our opinion both the plaintiff and the trial court took too expansive a view of the holding in *Grand Liquor* which was limited to a special situation, that of a computer printout as the basis for a corrected return.

■ Section 4 of the Retailers' Occupation Tax Act provides in part:

> "As soon as practicable after any return is filed, the Department shall examine such return and shall, if necessary, correct such return according to its best judgment and information, which return so corrected by the Department shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due, as shown therein. * * *

\*\*\*

Proof of such correction by the Department may be made at any hearing before the Department or in any legal proceeding by a reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. Such reproduced copy shall without further proof, be admitted into evidence before the Department or in any legal proceeding and shall be prima facie proof of the correctness of the amount of tax due, as shown therein." Ill. Rev. Stat. 1981, ch. 120, par. 443.

The statute does not spell out any precise method of producing the corrected return. However, when the corrected return, which makes the Department's *prima facie* case pursuant to the statute, is questioned, the method employed must meet some minimum standard of reasonableness. (*Fillichio v. Department of Revenue* (1958), 15 Ill. 2d 327, 155 N.E.2d 3.) The court in *Grand Liquor* noted the usual method:

"Previous to the advent of computer use by the Department in the assessment of tax deficiencies, the corrected returns, deemed to be *prima facie* correct, were products of the Department auditors' personal investigations, computations, and verifications of records, invoices, or other data. At a hearing to challenge the additional tax imposed by the correction, an auditor who corrected the returns, or another personally familiar with the case involved, would be present to answer questions as to the nature of the personal computations of the corrected assessment. *Anderson v. Department of Finance* (1938), 370 Ill. 225; *Copilevitz v. Department of Revenue* (1968), 41 Ill. 2d 154; *Du Page Liquor Store, Inc. v. McKibbin* (1943), 383 Ill. 276; *Novicki v. Department of Finance* (1940), 373 Ill. 342." (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 198, 367 N.E.2d 1238, 1240.)

It is significant, in our opinion, that exactly this method was employed in the case at bar. Both the fraud agent who instigated the audit and the auditor himself were present, testified, and were cross-examined by the plaintiff.

*Grand Liquor* presented a wholly different set of circumstances. In that case the corrected return was based upon data generated by a computer and the auditor acknowledged that he did not know what those data were. The court acknowledged that under proper circumstances, *i.e.*, proper foundation, the computer-generated records might be admissible, but it also took note of the problems relating to

computers:

> "Three potential sources of error underlie a computer record-keeping, data-processing system: 'the input of information by encoding or translating it [source documents] into machine language, the creation of the program which instructs the computer,' and the actual mechanical operation of the machine.' (Tapper, *Evidence from Computers*, 8 Ga. L. Rev. 562, 566 (1974).) Moreover, 'if the information from which the print-out is made has not been accurately compiled the computer's output will be similarly incorrect.' (8 Ga. L. Rev. 562, 567.) The latter aspect has been succinctly described in the cybernetics maxim, 'garbage in, garbage out.' 8 Ga. L. Rev. 562, 567." *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 199, 367 N.E.2d 1238, 1240.

We are thus persuaded that *Grand Liquor* is limited to computer cases. These undoubtedly will present problems for the Department, but those problems are for another case, another day.

It is true that the *Grand Liquor* court, citing *Novicki v. Department of Finance* (1940), 373 Ill. 342, 26 N.E.2d 130, reiterated the familiar rule that the fundamental rules of evidence had not been abrogated in revenue proceedings, but we do not believe that there has been any violation in the instant case. In *Du Page Liquor Store, Inc. v. McKibbin* (1943), 383 Ill. 276, 48 N.E.2d 926, the taxpayer produced no records with which to rebut the Department's *prima facie* case based on reconstruction from suppliers' records. The *Du Page Liquor* court approved of the method and distinguished *Novicki*. It pointed out that in *Novicki* the taxpayer had produced records and that the Department was using hearsay evidence to support its corrected return.

█ The true rule, then, appears to be that if the taxpayer produces records from which an audit can be made, the Department may not use hearsay evidence in an effort to shore up its case; if the taxpayer produces no records, the Department may use its best judgment and information, including what would otherwise be objectionable as hearsay, in producing its corrected return. *Grand Liquor* represents no departure from this rule. The colloquy set forth in that opinion shows that the taxpayer's books and records were available.

As noted in *Du Page Liquor*, a general denial by the taxpayer that the Department's corrected return is inaccurate is not sufficient to rebut the *prima facie* case. The trial court erred in its application of *Grand Liquor* to this case.

Although the trial court limited its ruling to *Grand Liquor*, a

number of subsidiary issues have been raised and argued by the parties in this court. Since the entire administrative record is before us, we elect to exercise our discretion and deal with them briefly.

The Department contends that the fraud penalty was properly imposed. We agree. The standard is that of clear and convincing evidence. (*Brown Specialty Co. v. Allphin* (1979), 75 Ill. App. 3d 845, 394 N.E.2d 659.) It was met in this case. Even a casual inspection of the hearing officer's remarks, set forth above, demonstrates fraud. In addition, the record is uncontradicted that the plaintiff admitted to the fraud agents that he had not filed correct returns and that he had never produced any records of any kind.

Plaintiff asserts that the Department violated his right to counsel during its investigation. He points to no specific constitutional provision, but cites *Bruske v. Arnold* (1968), 100 Ill. App. 2d 428, 241 N.E.2d 191. It is inapplicable in that it involved civil litigation after suit was filed. Both the appellate and supreme courts held that it was improper for a lawyer to communicate directly with the adverse party under those circumstances. The difference from the instant case is obvious. Any constitutional right to counsel attaches only in criminal proceedings and does not apply in administrative proceedings. (*Ganz v. Bensinger* (7th Cir. 1973), 480 F.2d 88.) Plaintiff here was represented during all the hearings before the Department and in the circuit court. We know of no rule which requires counsel during the initial investigatory stages.

Plaintiff next complains that it was improper to introduce his conviction of the misdemeanor charge. He claims that part of his plea agreement was that it would not be used as an admission. The record is not clear as to what the agreement was. In any event, there was adequate evidence of fraud independent of the conviction.

Plaintiff asserts that it was improper for members of the Department to have *ex parte* communications with each other and with the hearing officer and a violation of section 15 of the Illinois Administrative Procedure Act which provides:

> "Except in the disposition of matters which they are authorized by law to entertain or dispose of on an ex parte basis, neither agency members, employees nor hearing examiners shall, after notice of hearing in a contested case or licensing to which the procedures of a contested case apply under this Act, communicate, directly or indirectly, in connection with any issue of fact, with any person or party, or in connection with any other issue with any party or his representative, except upon notice and opportunity for all parties to participate. However,

an agency member may communicate with other members of the agency, and an agency member or hearing examiner may have the aid and advice of one or more personal assistants." Ill. Rev. Stat. 1981, ch. 127, par. 1015.

The hearing officer was an employee of the Department and also acted as prosecutor for the case. There is no prohibition against this. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 2, 416 N.E.2d 1082.) The nature of any communications is not clear in the record, but the statute is plain that members of the Department may communicate with each other.

■ Plaintiff complains that the Department ignored his books and records. Since he never produced any, the complaint sounds hollow. It sounds even more hollow when the record shows that by his own admission the plaintiff never kept any sales records.

■ Plaintiff complains that the Department's auditor was not a credible witness as a matter of law in that his calculations were based upon reconstructions and projections. The argument is specious since as has been noted many times plaintiff never produced any records from which concrete audit figures could be generated. In any event, it is not the province of a reviewing court in an administrative proceeding to reweigh the evidence nor pass upon the credibility of witnesses.

■ Plaintiff argues that he was denied due process in that the hearing officer was predisposed to rule in favor of the Department. He offers no specifics on this question, but only a vague feeling that as an employee of the Department, the hearing officer must have been partial to his employer. We note again that the relationship was not improper (*Scott*) and the divination of his motives is quite beyond our ability.

■ Plaintiff complains that the hearing officer did not comply with section 14 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1981, ch. 127, par. 1014) which requires that a final decision or order adverse to a party other than the agency in a contested case shall be in writing or stated in the record. We are unable to understand the contention. The written findings on the evidence and conclusions of law by the hearing officer cover seven and one-half pages in the common law record. Section 14 was fully complied with.

■ Finally, plaintiff argues that the notices of tax liability were barred by the statute of limitations. Section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 443) provides that no notice of tax liability shall be issued on or after each January 1 and July 1 which covers gross receipts received during any month or period of time more than three years prior to such January 1 and July

1. One notice here was issued October 31, 1979, covering the period from April 1, 1976, through December 31, 1976. Plaintiff claims that only the months of November and December 1976 were within the statute.

The answer is that by the terms of section 4 itself the limitations do not apply in the case of fraudulent returns. We have already held that fraud was present in this case. The limitations argument is without merit.

The motion to strike portions of plaintiff's reply brief is allowed; the order of the circuit court of Sangamon County is reversed; and the final assessments of the Department of Revenue are affirmed.

Reversed.

MILLS and TRAPP, JJ., concur.