A. R. BARNES AND COMPANY, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, State of Illinois, Defendant-Appellee.

First District (1st Division) No. 87—2872

Opinion filed August 15, 1988.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (William G. Swindal and Nancy G. Lischer, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, A. R. Barnes and Company, a printing broker, appeals from a judgment entered by the circuit court on administrative review which affirmed a determination by the Department of Revenue (DOR) that plaintiff owed the DOR for overcollection of service occupation tax from its customers during the tax period of July 1981 through July 1984. On appeal, plaintiff contends that: (1) the DOR wrongfully added a new charge alleging improper recordkeeping after the hearing on the original charge of overcollection; (2) the circuit court's decision was contrary to the manifest weight of the evidence; and (3) the DOR failed to prove that plaintiff's manner of recordkeeping violated any legal requirements. For the following reasons, we affirm the judgment of the circuit court.

As a printing broker, plaintiff is subject to the service occupation tax (SOT), imposed pursuant to the Service Occupation Tax Act (the SOT Act) (Ill. Rev. Stat. 1985, ch. 120, par. 439.101 *et seq.*) on all per-

sons engaged in the business of making sales of service. The SOT is intended to place servicemen, such as plaintiff, on a tax parity with retailers to the extent they transfer tangible personal property to the ultimate consumer as an incident to the sale of service. The SOT is either collected from the serviceman by his supplier, who then remits it to the DOR, or is remitted directly to the DOR by the serviceman after the transfer of the property to a purchaser. (*Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 319 N.E.2d 5.) During the tax period in question, the SOT statutory rate was 4% and then increased to 5% effective January 1, 1984. Pursuant to customary practice, the SOT for a printing broker is assessed on 40% of its gross sales. In the present case, plaintiff collects the SOT directly from its customers. Pursuant to section 3 of the SOT Act, if a company collects more SOT from a customer than the actual statutory SOT liability, the customer has a legal right to claim a refund of the overcollected amount or, if the overcollection is not refunded to the customer, the company is liable to pay such amount to the DOR.

In November 1984, following an audit of plaintiff's books and records for the tax period of July 1981 through July 1984, the DOR concluded that plaintiff had been collecting SOT on 100% of its gross sales instead of the required 40% and remitting only 40% to the DOR. As a result, on December 26, 1984, the DOR issued notices of tax liability to plaintiff for the extra 60%. Plaintiff protested the DOR's finding and requested an administrative hearing.

At the hearing, Phillip Solars, supervising tax auditor for the DOR, testified that the determination of overcollection was predicated on the manner in which plaintiff invoiced its customers. In particular, plaintiff had an entry line on its invoices entitled "tax and miscellaneous" which allegedly combined the applicable SOT plus any other non-printing expenses such as warehousing the customer's forms. Solars stated that on each invoice in question, the amount entered as "tax and miscellaneous" was equivalent to an SOT tax on the total amount billed for services, rather than on just 40% of the total gross sales. Solars further testified that when the SOT increased during the period in question, the total "tax and miscellaneous" amount on plaintiff's invoices increased an equivalent amount. Solars also stated that invoices marked "exempt" or "nontaxable" contained no miscellaneous charges. When Solars and John Thomas, the DOR auditor who actually had performed the audit of plaintiff's books, asked plaintiff for an explanation as to the coincidence of equivalent figures, they were not given a satisfactory answer. However, the record does not indicate what answer was given.

Plaintiff's president, Gerald Herr, testified that the "tax and miscellaneous" charge consists of SOT plus costs of warehousing and related services to the customer for forms management. Herr stated that he combined the tax and miscellaneous costs for two reasons: (1) to prevent the customer from calculating the company's costs; and (2) to separate services which are not subject to salesmen's commissions. Further, he was reluctant to reprogram the computer system to separate the two entries because of the expense involved in doing so. Herr stated that the current system had just been set up after the last DOR audit a few years ago on the suggestion of the DOR auditor that the two entries be combined. Herr further explained that the "miscellaneous" charge does not appear on invoices for tax-exempt organizations because: (1) forms are usually directly shipped and the warehousing services are not used; or (2) if the services are used, no attempt is made to recoup their costs because the organizations are charities.

Plaintiff's auditor, Thomas Lydon, testified that plaintiff carries the amount collected under the invoice entry "tax and miscellaneous" on its general ledger as an account entry entitled "sales tax and miscellaneous." Further, the ledger reflects the total amounts collected as a credit and total amount of SOT remitted as a debit. State and Federal taxes are paid on the amount collected for plaintiff's costs in warehousing and forms management. When queried as to how the SOT was calculated, Lydon presented contradictory explanations. On direct, Lydon stated that he calculated the SOT on 40% of the taxable sales. On redirect, he stated that the SOT is calculated on 40% of the taxable sales plus tax and miscellaneous.

After reviewing all of the evidence, the hearing officer concluded that plaintiff's arguments were not persuasive and that it was "clear" that plaintiff was charging SOT on 100% of its gross sales rather than 40% and not passing on the extra 60% to the DOR. In affirming the hearing officer's determination, the trial court stated:

"Neither the testimony of taxpayer's president or accountant nor its documentary exhibits sufficiently establish the nature of the overcollection as a warehousing service charge. The record is devoid of any statements or affidavits from customers attesting to their understanding that the overcollection was a warehousing service charge. No customer warehousing contracts were introduced into evidence. No evidence was offered to show that a service charge for warehousing was customary in the printing business. And, none of the evidence established a relationship between the cost of warehousing, the service

charge and the customer usage of warehousing. There is, however, evidence in the record to establish that some large customers refused to remit more than the 'prevailing rate of tax' to taxpayer. And, taxpayer did not pursue a service charge collection against those customers."

Plaintiff's timely appeal followed.

■ Initially, plaintiff argues that the DOR wrongfully added· a new charge to the administrative proceedings after the hearing. Specifically, plaintiff claims that the DOR's memorandum of law, filed after the hearing, added a charge alleging that plaintiff had violated relevant statutes and regulations relating to methods of recordkeeping in addition to the original overcollection charge. In our view, the record does not support plaintiff's contention. The DOR's memorandum· of law specifically stated: "The sole issue for review in this case is whether the treatment of [sales tax and miscellaneous] figures constitutes sales tax which should be remitted in full to the Department of Revenue." In other words, the issue is whether overcollection occurred. Logically, the only manner in which to determine whether overcollection occurred is to review the relevant books and records which plaintiff has a duty to maintain pursuant to DOR rules and regulations. (See *Copilevitz v. Department of Revenue* (1968), 41 Ill. 2d 154, 242 N.E.2d 205.) The duty is not separate and distinct from the issue of overcollection. Rather, it is integral to resolution of that issue.

■ We further note that charges filed before an administrative agency need not be drawn with the same refinements and subtleties as pleadings in a court of law. Instead, the charges need only reasonably apprise the respondent of the charges so that he can intelligently prepare his defense. (*Cartwright v. Illinois Civil Service Comm'n* (1980), 80 Ill. App. 3d 787, 400 N.E.2d 581.) In the present case, plaintiff was on notice that he would be confronted with testimony and analysis of his records.

■ Plaintiff next contends that the administrative decision was against the manifest weight of the evidence. With regard to the examination of tax returns, including those filed with respect to the SOT Act, section 4 of the Retailers' Occupation Tax Act (the ROT Act) (Ill. Rev. Stat. 1985, ch. 120, par. 443) provides, in pertinent part:

"As soon as practicable after any return is filed, the Department shall examine such return and shall, if necessary, correct such return according to its best judgment and information, which return so corrected by the Department shall be *prima*

*facie* correct and shall be *prima facie* evidence of the correctness of the amount of tax due, as shown therein. ***

\* \* \*

Proof of such notice of tax liability by the Department may be made at any hearing before the Department or in any legal proceeding by a reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. Such reproduced copy shall without further proof, be admitted into evidence before the Department or in any legal proceeding and shall be *prima facie* proof of the correctness of the amount of tax due, as shown therein."

Once the DOR establishes its *prima facie* case, the burden shifts to the plaintiff to overcome it by producing competent evidence, identified with its books and records, showing that the DOR's returns are incorrect. *Jefferson Ice Co. v. Johnson* (1985), 139 Ill. App. 3d 626, 487 N.E.2d 1126; *Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.

In the present case, plaintiff argues that the DOR failed to establish a *prima facie* case because the documents introduced by the DOR and the testimony of its sole witness, Phillip Solars, were incompetent and based on hearsay. Specifically, plaintiff claims that Solars had no personal knowledge of the audit and that he had relied solely on sales invoices which he even admitted were not conclusive of the charge of overcollection.

■ Contrary to plaintiff's assertion, there is no statutory requirement that the DOR substantiate the basis for its corrected return. It is only necessary that the DOR determine a corrected return according to its best judgment and information. (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238.) Furthermore, the DOR is not required to produce the auditor who computed the corrected return in order to support its *prima facie* case. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) In fact, the supreme court has held that when corrected returns are the product of a DOR auditor's personal investigation, either the auditor who corrected the return or another personally familiar with the case may testify at the hearing. (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238.) In the present case, Phillip Solars, as supervising auditor for the DOR, testified that he had personally visited plaintiff's company and had reviewed plaintiff's invoices and records with John Thomas, the auditor who had prepared the corrected return. In addition, Solars had dis-

cussed the matter of overcollection with Thomas and had reviewed and signed Thomas' audit report which specifically concluded that plaintiff had been charging its customer SOT on 100% of gross taxable sales.

■ Plaintiff further argues that with respect to the documents relied on by the DOR, no witness testified as to their accuracy and the documents did not display the DOR director's certificate as to their authenticity as required by statute. As previously stated, the corrected tax returns are deemed *prima facie* correct and do not require testimony to that effect. With respect to the lack of a director's certificate, plaintiff's failure to raise this issue at the administrative hearing has waived it for review. *Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 504 N.E.2d 1344.

In addition, we find plaintiff's reliance upon *Novicki v. Department of Finance* (1940), 373 Ill. 342, 26 N.E.2d 130, *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238, and *Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 453 N.E.2d 48, for its contention that the DOR has failed to establish a *prima facie* case misplaced on the ground that each of these cases is factually distinguishable from the case at bar. In *Novicki*, defendant, a tavern owner, was assessed a deficiency in the amount of retailers' occupation tax due. At the hearing, the Department of Finance introduced into evidence statements of plaintiff's purchases from various vendors. An investigator for the Department testified at the hearing that he had examined the vendors' records and that the statements were correct. However, he could not testify as to the accuracy of the records from which the statements had been taken. The *Novicki* court found that the statements were inadmissible hearsay. In the present case, Solars had personally reviewed plaintiff's records and signed Thomas' report. Further, there is no issue as to the accuracy of the figures used to compile plaintiff's records. In *Puleo*, plaintiff had failed to keep any books. As a result, the auditor had to reconstruct sales data from other evidence. In our case, the books were available and no reconstruction was necessary. Finally, in *Grand Liquor Co.*, the issue was specifically limited to the evidentiary effect given to a DOR estimated tax correction predicated upon a computer printout. Again, the situation is distinguishable from the present case.

■ As stated, once the DOR has established a *prima facie* case, the burden shifts to the taxpayer to overcome the case. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) A taxpayer cannot overcome the DOR's *prima facie* case merely by denying the accuracy of its assessments. Instead, evidence must be pre-

sented which is consistent, probable, and identified with its books and records. *Central Furniture Mart, Inc. v. Johnson* (1987), 157 Ill. App. 3d 907, 510 N.E.2d 937.

■ In the present case, we agree with the trial court's conclusion that plaintiff has failed to rebut the DOR's *prima facie* case. Plaintiff argues that the word "miscellaneous" as it appears on its invoices refers to warehousing service charges. However, as the trial court noted, plaintiff failed to introduce any statements or affidavits from customers indicating their understanding of the meaning of "miscellaneous," any customer warehousing contracts, or any evidence that such a charge was customary in the trade. Furthermore, we find that plaintiff's explanation for commingling SOT and warehousing charges is unpersuasive. First, plaintiff explains it did not want its actual warehousing costs to be readily discernible to its customers because of close competition in the industry. We are unpersuaded that an itemization of SOT and warehousing charges would impact negatively on plaintiff's customer base. The amount the customer is required to pay is not altered. Second, plaintiff claims that combining SOT and miscellaneous eased the calculation of salesmen's commissions which were not computed on those charges. In our view, warehousing charges could be excluded from commission calculations just as easily as a separate entry as they could as an entry combined with SOT.[1] Finally, plaintiff complains that it is too costly to redesign the computer program for a new billing procedure. However, the cost did not appear to be a deterrent factor when plaintiff designed the current computer program to combine "tax and miscellaneous" a few years earlier allegedly at the suggestion of the previous DOR auditor. We agree with the trial court's statement that plaintiff's justifications for commingling SOT and income "taxes the credulity of the court."

In addition, we cannot ignore the striking "coincidences" with respect to the "tax and miscellaneous" charges and an assessment of SOT on 100% of the gross taxable sales. First, when the SOT in-

---

[1] We note that warehousing charges are not always deductible from taxable tangible property in the computation of SOT. If additional charges, such as warehousing or delivery charges, are included in the selling price of tangible personal property which is sold, those charges comprise an element of cost to the seller and may not be deducted by the seller in computing his tax liability. However, where seller and buyer agree upon those charges separately from the selling price of the tangible personal property, the charges are not a part of the "selling price," but instead are service charges and need not be included in the figure upon which the seller computes his tax. *Gapers, Inc. v. Department of Revenue* (1973), 13 Ill. App. 3d 199, 300 N.E.2d 779.

creased from 4% to 5%, the total "tax and miscellaneous" charge increased from 4% to 5% of the total gross sales. Second, if no tax was charged, no miscellaneous was charged. Just as plaintiff's justifications for commingling SOT and income taxed the credulity of the trial court, the aforementioned coincidences have the same effect on this court.

With respect to plaintiff's contention that the DOR failed to prove that plaintiff's recordkeeping violated any regulations, it is not necessary for the DOR to prove that plaintiff's recordkeeping violated any regulations. (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238.) The issue is overcollection, not violation of recordkeeping regulations. In light of the fact that a taxpayer's oral testimony without sufficient corroborative evidence will not rebut a *prima facie* case (*Rentra Liquor Dealers, Inc. v. Department of Revenue* (1973), 9 Ill. App. 3d 1063, 293 N.E.2d 388), it would have been in plaintiff's best interests to maintain detailed records that clearly indicated the character and cost price of every transaction as required under section 140.701 of the Illinois Administrative Code (86 Ill. Admin. Code 140.701 (1985)).

Finally, plaintiff's estoppel argument that the entry line "tax and miscellaneous" was implemented upon the advice of the previous DOR auditor is without merit. It is well established that a mistake or error by a DOR agent or employee cannot be held against the DOR. (*Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437.) Moreover, even if the auditor had advised plaintiff to commingle the charges, there is no evidence that the auditor encouraged plaintiff to maintain its books and records in such a fashion that it would not be able to rebut a *prima facie* case of overcollection.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.