# Illinois Official Reports

## Appellate Court

---

### *Chak Fai Hau v. Department of Revenue*, 2019 IL App (1st) 172588

---

| | |
|---|---|
| Appellate Court Caption | CHAK FAI HAU, d/b/a Joye Chop Suey, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE and CONSTANCE BEARD, in Her Official Capacity as Director of Revenue, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-17-2588 |
| Filed | February 27, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-10662; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William P. Drew III, of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment and opinion. |

¶ 1     Plaintiff-taxpayer, Chak Fai Hau, doing business as Joye Chop Suey, appeals from the circuit court's judgment affirming in part the Department of Revenue's (Department) tax assessment for the period from January 1, 2008, through December 31, 2010. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Hau is the sole proprietor of Joye Chop Suey, a carryout-only Chinese restaurant located at 4829 West Chicago Avenue in Chicago, Illinois. The Department assigned Denise Berry to audit Hau's business taxes for the period from January 1, 2008, through December 31, 2010. The Department found that Hau fraudulently underreported his total sales during this period and issued corrected tax returns requesting Hau pay $206,455 to cover tax deficiencies under the Retailers' Occupation Tax Act (Act) (35 ILCS 120/1 *et seq.* (West 2014)), penalties for fraud and late payment, and accumulated interest. On June 13, 2012, the Department issued two Notices of Tax Liability (NTLs) to Hau, covering the tax periods from January 1, 2008, through June 30, 2009, and from July 1, 2009, through December 31, 2010, detailing the breakdown of the corrected tax assessment.[1] Per the instructions on the NTLs, Hau filed a protest on July 16, 2012, and requested an administrative hearing. The evidentiary hearing before an administrative law judge (ALJ) took place on December 11, 2013.

¶ 4                               A. The Evidentiary Hearing

¶ 5     The Department limited its case-in-chief to submitting records, certified by the Department's director, into evidence. These records consisted of a completed form titled "Audit Correction and/or Determination of Tax Due" and copies of the NTLs issued to Hau. The ALJ found that such certified documents were *prima facie* correct and overruled Hau's counsel's hearsay objections. The ALJ also asked counsel if he understood that the admitted documents established the Department's *prima facie* case. Counsel responded that he understood but nevertheless argued that a *prima facie* case was not made because the exhibits failed to establish whether the Department employed minimum standards of reasonableness to determine Hau's tax liability. Counsel further complained that the auditor was not present to testify. The Department responded once again that the law supported finding the proffered exhibits as *prima facie* correct irrespective of anything else. The ALJ agreed and counsel commented, "We'll see, yeah. I'm—Sure."

¶ 6     Hau testified, with the help of a Chinese interpreter, that he was 73 years old at the time of the hearing. He opened the restaurant in 2001 and operated it with the help of his wife. From the restaurant's opening through early 2012, Hau retained Maria Tai, an accountant from First Quality Financial Group, to file his taxes. During the audit period, Hau had two part-time employees who assisted with food preparation and other small tasks. His wife

---

[1]For January 1, 2008, through June 30, 2009, Hau was assessed $51,995 due in tax; $20,798 for a late payment penalty; $51,995 for a fraud penalty; and $11,650.06 due in interest, for a total assessment of $136,438.06. From July 1, 2009, through December 31, 2010, Hau was assessed $48,007 due in tax, $9658 for a late payment penalty, $24,003 for a fraud penalty, and $2194.15 due in interest, for a total assessment of $83,862.15.

worked the front of the store taking orders and "handl[ing] purchase transactions" while Hau managed everything else, including all the cooking.

¶ 7    Hau prepared his sales tax returns by calculating total daily sales and reporting those figures along with his expenses to Tai on a monthly basis. He did not provide Tai with any of the physical sales receipts. Hau also initially testified that he only accepted cash payments during the audit period because he did not have the machine to read credit cards, however he changed his statement and acknowledged that there were a small percentage of credit transactions during the audit period. He later testified that the register machine had been stolen at least twice, although he only reported the theft once, and it was unclear during which periods of time he did not have a register.

¶ 8    Hau submitted into evidence copies of his tax returns for 2008, 2009, and 2010. The copies were signed by a preparer from First Quality Financial Group but did not bear Hau's signature. Hau commented, unprompted, that he did not understand the tax forms and just signed what his accountant had prepared. When asked specifically about the Schedule C figures, Hau responded, "To be honest, I never see this. I never see that because I have no knowledge how to calculate this number." Hau further testified that although he reported the information to Tai, he had forgotten the amounts due to his old age. The Department objected to the admission of the tax returns because Hau could not authenticate the documents. The ALJ admitted the evidence over the Department's objection.

¶ 9    Hau also submitted a copy of the restaurant's menu representing the prices charged during the audit period. The most expensive item on the menu cost $16.45, the cheapest cost $0.60, and the majority of items cost $3 to $8. He testified that he used four sizes of containers, ranging from 8 to 38 ounces, to package food. The extra-large 38-ounce container was sparingly used for items like egg foo young. Rice would be packed for free, in a separate small or large container, with each purchase of a small or large entree. Some appetizers, such as egg rolls, were not packaged in a container at all and were placed in a small white bag instead. Hau also gave rough estimates about the percentage each type of item accounted for from his total sales, with fried rice at 50%, seafood entrees at 30%, and other meat entrees at 20%. Hau estimated his average sales revenue to be $300 per day for Monday through Thursday, around $600 to $700 on Fridays and Saturdays, and that his profit margin for sales averaged 25%. The restaurant was closed on Sundays, holidays, and on slow nights when there was no business.

¶ 10    Hau testified about his expenses and stated that he would buy containers whenever they were on sale and place them into storage. He could not estimate how often he would deplete and restock the containers, which came in packs of 500. Hau also estimated that he would lose money on 10% of phone orders after the customers failed to pick up and pay for their food.

¶ 11    Hau was questioned about a previous hearing he had against the Department regarding a sales tax issue. It was elicited that in relation to an audit for the period of January 1, 2005, through December 31, 2007, Hau and the Department reached an agreement that he would reduce the percentage of markup on sales. Hau denied that he had received notice or was informed by his accountant about the need for cash register tapes after the first audit. However, he stated that, in the last six months, he had begun to maintain records in a new way. He then attempted to submit the physical sales receipts and a prepared statement recording the daily gross receipts for August 2013. Although Hau testified the figures were

"probably the same" as a monthly statement for the audit period would be, the ALJ sustained the Department's objection and excluded the evidence as irrelevant to the audit period. Hau was asked if he also maintained purchase records, to which he stated, "Now we have, yeah," and he indicated that he would have produced them for the hearing if he had been asked. Lastly, Hau testified that during the audit he complied fully and turned over all the sales receipts and purchase records he had available. He also noted that there was a leak in his restaurant's roof at one point in time and there was water damage to some records, which he threw away.

¶ 12    After the conclusion of Hau's testimony, the Department offered into evidence an "Audit Narrative" prepared by Berry on April 30, 2012, and filed with the certificate of the Department's director. Berry wrote that during the audit she examined invoices, some guest checks, Hau's personal tax returns and the related Schedule Cs, the monthly sales tax returns, bank statements, EDA-20s, as well as numerous documents prepared by Hau in Chinese and transmitted to Tai. These self-prepared documents included monthly receipt summaries, cash payouts, and inventory purchases as well as yearly recaps of sales/receipts, expenses, and gross profit. Berry thus found that "[t]he owner is in control of all figures that go on the [monthly sales tax returns] and personal returns."

¶ 13    Berry noted that Hau's bank deposits and cash payout reports did not match up. She calculated that $135,642 of unreported receipts were missing from the bank deposits. Berry found that Hau paid for inventory with cash and other expenses and investments were paid by money orders. Berry further noted that Hau also retained Tai as a personal financial investor and was well diversified. Although Berry worked with Tai at the beginning of the audit, Tai expressed that she would stop representing Hau in 2012 citing her company's inability to spare the time needed to continue compliance with the audit.

¶ 14    Berry described Hau's restaurant and her personal experience ordering food for carryout. She related that when paying using her debit card, she was provided with a receipt, however, she did not receive one when paying with cash. Rather, she noted that customers were given their orders with the "guest check" stapled to the bag. These guest checks were written in Chinese and copies of the guest checks were turned over for the audit. Berry attempted to schedule the receipts based on the June 2010 guest checks despite the checks being out of numerical order and her belief that "[t]here's no control whatsoever for guest checks." Berry calculated receipts totalling $15,200.21 based on the June 2010 guest checks, which did not match Hau's reported receipts of $9941.

¶ 15    Berry contacted the suppliers Hau relied on and requested they complete EDA-20s. Berry believed that purchase orders for meat and seafood were missing from the documents turned over for the current audit because in comparison to figures from Hau's first audit, meat and seafood purchases had decreased around $23,000 annually whereas the amount of rice purchased remained the same. As she believed too many purchase orders were missing to utilize a markup method, she calculated the tax due by estimating sales receipts under "the container method." She described her calculations as follows: Using 2010 as a test year, Berry reviewed invoices from June through August and "scheduled out all of the containers." Berry then calculated the average selling price for the large and small rice orders and determined the average monthly receipts based on the number of containers used. From there, she multiplied by 12 to get the expected annual total sales receipts. She then calculated

the tax deficiency by subtracting the reported taxable sales receipts from her calculated total and multiplying by the sales tax percentage.

¶ 16    Berry calculated the total tax due for the audit period as $100,002. She reported that she hand-delivered the audit results to Hau and informed him he had 30 days to review the audit and make his payment. At that point, Hau had not retained a new accountant and stated he would have his new accountant speak with Berry later. Berry's narrative also referenced several documents in the "audit package," however these documents were not introduced into evidence.

¶ 17                          B. The ALJ's Recommendation

¶ 18    The ALJ prepared a 12-page recommendation for disposition in which he found that the NTLs admitted into evidence established the Department's *prima facie* case. Further, Hau did not have books and records available for audit as required by Illinois law. The ALJ concluded that, due to Hau's failure to maintain records, the container method employed by the auditor to determine the unreported tax liability and related penalties was a "reasonable" method to estimate revenue and the related sales tax. Although Hau disputed the container method, Hau's testimony about his use of the containers without documentary support was insufficient to disprove the reasonableness of the auditor's calculations. The ALJ concluded that Hau's submission of his tax forms was inadequate to establish that the figures listed were more accurate or more reasonable than the auditor's calculations. The ALJ noted that Hau had not signed the tax forms and could not testify as to their accuracy. Furthermore, Hau testified that his accountant prepared the forms based on information that he calculated and submitted without the supporting physical receipts. The ALJ found that in line with case law, he could not find Hau's summary calculations overcame the Department *prima facie* case.

¶ 19    The ALJ also found that the record failed to establish, by clear and convincing evidence, that Hau filed his returns with an intent to defraud. The Department had the burden to prove fraud, and the ALJ found that the sole support for a fraud penalty stemmed from the auditor's calculation that the net tax reported percentage change was 555%. The auditor's narrative directed the reader to other supporting documents which were not submitted into evidence at the hearing. The ALJ believed that a simple misunderstanding on Hau's part due to the language barrier and his advanced age could just as likely explain his accounting errors as intent to defraud.

¶ 20    In addressing Hau's remaining contentions, the ALJ found that the Department had not violated Hau's due process rights in relation to waiving the statute of limitations. The ALJ noted that the forms indicated the waiver was marked for the benefit of the taxpayer rather than the Department, and the Department was not required by statute, regulation, obligation, or duty to present the waivers in Chinese or communicate with Hau in Chinese. The ALJ found that Hau had his own duty to ensure he understood the agreement before signing. Thus, Hau could not complain where he had the opportunity and means to seek assistance from counsel or his accountant prior to signing the waivers.

¶ 21    The ALJ recommended that the NTLs be revised to eliminate the fraud penalties but found that the alleged taxes owed and late penalties due should be finalized as assessed.

## C. The Director's Decision

In 2015, Department Director Constance Beard (Director) entered her decision and ordered finalization of the NTLs issued to Hau as they were originally entered. Although she adopted the majority of the ALJ's recommendations, the Director believed that the record supported a fraud penalty and entered additional findings of facts and conclusions of law in accordance with her opinion.

The Director gave special consideration to the differences between Hau's first audit and the current audit. The Director found that Hau had been given actual written notice of the record-keeping requirements. She believed he realized that if such records were not provided the auditor would be forced to use the markup method and roughly estimate sales based on purchase records. Thus, she inferred that Hau had intentionally produced fewer purchase records in an attempt to reduce the estimated gross sales.

The Director further highlighted that Hau provided the auditor with a receipt for her purchase on a debit card but not for the cash purchase. She also determined that at the very least, Hau fraudulently reported his sales based on the guest checks he had provided to the auditor for June 2010, which were totaled to be 150% greater than the reported receipts. Lastly, the Director placed emphasis on the fact that the auditor determined that Hau used cash from his sales to purchase savings bonds and other personal investments in amounts that greatly exceeded the gross receipts reported on the tax returns.

Following the Director's decision, two "Revised Final Assessments" were issued to Hau on June 5, 2015. For the tax period from January 1, 2008, through June 30, 2009, Hau was assessed as owing $143,117.26 and from July 1, 2009, through December 31, 2010, $88,250.28 for a total assessment of $231,367.54[2] due by July 5, 2015. Hau filed a complaint for administrative review on July 10, 2015.

## D. Circuit Court Order

The circuit court held that the Act and case law established the Department's *prima facie* case was proven by the certified exhibits. However, the court agreed with Hau that the auditor's methods were "opaque at best" because she did not give a formal accounting or mention the exact prices used in her calculations. Given the "rather large estimate" her calculations netted, the court expected to see a more thorough work-up in the audit. Nevertheless, the court could not rule that the Department failed to meet a minimum standard of reasonableness. The court wrote that Hau's challenge to the calculations lacked documentary evidence and could not prove that there was a better way to calculate the estimated sales receipts where no books and records existed. Even Hau's testimony failed to mount a sufficient challenge to the auditor's "container method," where Hau could not describe the frequency of his purchases of containers, the rate at which he used them, or adequately describe which containers were used for which items he sold. Although the court was sympathetic to Hau, it did not find that the Department's *prima facie* case had been overcome.

As to the fraud penalties, the court overruled the Director's decision finding that there was no clear showing of the prerequisite intent to fraud. Although the Director drew

---

[2]The revised final assessment included an additional $100 "Cost of Collection Fee" for each reporting period and levied additional interest charges computed through June 5, 2015.

comparisons to another case, the court found that the Director had an aggressive reading of the evidence in the record and Hau's case was distinguishable from case law in which the Department had submitted significantly more evidence and the taxpayer had a less believable defense. The court would not absolve Hau's tax liability due to the language barrier and his old age but found that such circumstances called into question his intent to defraud the State. Thus, the court held that the Department had failed to prove fraud by clear and convincing evidence where fraud or general incompetence and ignorance were equally likely explanations for Hau's tax deficiency.

## II. ANALYSIS

### A. Standard of Review

When an appeal is taken to the appellate court following entry of judgment by the circuit court on administrative review, it is the decision of the administrative agency, not the judgment of the circuit court, which is under consideration. See *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 560 (2004). Our statutes mandate that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct" and "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." 735 ILCS 5/3-110 (West 2014). Thus our courts have held that "it is not a court's function on administrative review to reweigh evidence or to make an independent determination of the facts." *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009). When an administrative agency's factual findings are contested, the court will only ascertain whether such findings of fact are against the manifest weight of the evidence. *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 244 (2009).

Conversely, if the dispute is over an agency's conclusion on a point of law, the decision of the agency is subject to *de novo* review by the courts. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008). A third standard is applicable where the dispute concerns the legal effect of a given set of facts, *i.e.*, where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard. A mixed question of law and fact is reviewed for clear error. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 273 (2009). An administrative decision will be set aside as clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.*

### B. The Auditor's Narrative

As a preliminary matter we address Hau's arguments regarding the admission of and use of the auditor's narrative during these proceedings. Hau first challenges the admissibility of the narrative arguing that it did not constitute competent evidence because the auditor did not testify. Hau further contends it was unfair for the ALJ and Director to draw conclusions based on the narrative, which was not presented during the Department's case-in-chief. Hau argues that the narrative was not a part of the Department's *prima facie* case and therefore it was erroneous to cite the narrative in support of finding that Hau failed to rebut the Department's *prima facie* case. Although Hau raised the issues as evidentiary objections, the Act has several applicable provisions which the Department cites in rebuttal to Hau's

objections. Thus, Hau's arguments pose mixed questions of law and fact, which we review for clear error.

¶ 36    First, we find that the plain language of the Act clearly negates Hau's challenge to the auditor's narrative as competent evidence. Section 8 of the Act states,

> "[t]he books, papers, records and memoranda of the Department, or parts thereof, may be proved in any hearing, investigation, or legal proceeding by a reproduced copy thereof under the certificate of the Director of Revenue. Such reproduced copy shall, without further proof, be admitted into evidence before the Department or in any legal proceeding." 35 ILCS 120/8 (West 2014).

Hau makes no effort to explain why the auditor's narrative does not fall under the "books, papers, records and memoranda of the Department." Hau simply repeats the same hearsay argument made during the hearing. We find that the auditor's narrative was prepared as a memorandum of the Department detailing the procedures of the audit, certified by the Department's director, and properly admitted into evidence by the ALJ. Under section 8 of the Act, the auditor was not required to testify in order to admit the narrative into evidence.

¶ 37    Second, we disagree with Hau that the ALJ and Director incorrectly referred to and relied on the auditor's narrative to draw conclusions about the case. We find that Hau's argument amounts to a mere technicality about the presentation of evidence. The Act provides that the Department is not bound by the technical rules of evidence during the hearing. See 35 ILCS 120/8 (West 2014). But see *Novicki v. Department of Finance*, 373 Ill. 342, 344 (1940) (this statutory provision does not abrogate the fundamental rules of evidence). The provision further provides that, "[i]n the conduct of any investigation or hearing, *** no informality in any proceeding, or in the manner of taking testimony, shall invalidate any order, decision, rule or regulation made or approved or confirmed by the Department." 35 ILCS 120/8 (West 2014). Thus, we find no justification for invalidating the administrative decision simply because the ALJ or Director relied on evidence introduced in rebuttal in discussing Hau's failure to overcome the Department's *prima facie* case.

¶ 38    We cannot find any error in the ALJ's admission of the auditor's narrative into evidence or the ALJ's and Director's reliance on the narrative in drawing their conclusions. Accordingly, there is no reason to set aside the administrative decision on these claims.

¶ 39                              C. The *Prima Facie* Case

¶ 40    Hau contends that the Department failed to present a *prima facie* case where the corrected tax return and NTLs allegedly proving the *prima facie* case were based on inadmissible hearsay. Hau further challenges the Department's method of assessment, arguing that it failed to meet a minimum standard of reasonableness. In the alternative, Hau argues that he factually rebutted the Department's *prima facie* case through his credible testimony and the submission of his federal income tax returns for the audit period.

¶ 41                              1. Corrected Tax Return and NTLs

¶ 42    Like his challenge to the auditor's narrative, Hau's contention that the exhibits offered in the Department's case-in-chief are inadmissible is negated by the Act. Section 4 of the Act expressly provides that:

"In the event that the return is corrected for any reason other than a mathematical error, any return so corrected by the Department shall be *prima facie* correct and shall be *prima facie* evidence of the correctness of the amount of tax due, as shown therein. \*\*\*

\*\*\*

Proof of such correction by the Department may be made at any hearing before the Department or the Illinois Independent Tax Tribunal or in any legal proceeding by a reproduced copy or computer print-out of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. \*\*\* Such certified reproduced copy or certified computer print-out *shall without further proof*, be admitted into evidence before the Department or in any legal proceeding and shall be *prima facie* proof of the correctness of the amount of tax due, as shown therein." (Emphasis added.) 35 ILCS 120/4 (West 2014).

Here, the documents submitted were provided along with the certification of the Department's director. The Act is clear that corrected tax returns are admissible and that no further proof is necessary. We further find that copies of the NTLs issued and submitted into evidence were also admissible under section 8 of the Act as "books, papers, records and memoranda of the Department." See 35 ILCS 120/8 (West 2014). Thus, we find that the ALJ properly admitted these documents into evidence under the Act and Hau's argument for setting aside the decision on this claim has no merit.

¶ 43 Furthermore, we have strictly construed the statute insofar as establishing a *prima facie* case is concerned. *Masini v. Department of Revenue*, 60 Ill. App. 3d 11, 14 (1978). "Illinois courts have uniformly sustained a *prima facie* case based on corrected tax returns." *Mel-Park Drugs, Inc. v. Department of Revenue*, 218 Ill. App. 3d 203, 207 (1991); see also *Central Furniture Mart, Inc. v. Johnson*, 157 Ill. App. 3d 907, 910 (1987). Thus, the ALJ and Director correctly interpreted the Act and found that the Department's submission of corrected returns and the NTLs established its *prima facie* case.

¶ 44                              2. Minimum Standard of Reasonableness

¶ 45 Hau further challenges the Department's *prima facie* case by arguing that the audit procedures were arbitrary and capricious resulting in an unreliable assessment. Hau contends that the Department's *prima facie* case was not substantiated with "sufficient and probative documentary proofs" and, therefore, the auditor should have testified to explain and justify the amounts Hau was alleged to owe in tax. Hau cites *Grand Liquor Co. v Department of Revenue*, 67 Ill. 2d 195, 201-02 (1977), in support of finding that the auditor needs to testify. He also points to the circuit court's finding that the auditor's narrative was "opaque" in describing the methods employed to determine tax liability. Thus, Hau argues that the narrative was meaningless in establishing whether the Department's methods of assessment met a minimum standard of reasonableness and the *prima facie* case must fail.

¶ 46 If the taxpayer calls into question the method employed by the Department to calculate the amount of tax due, then the record must show that the techniques and assumptions that the Department used met some minimum standard of reasonableness. *Mansini*, 60 Ill. App. 3d at 14. This requirement is tied to section 4 of the Act, which states that, "the Department shall examine such return and shall, if necessary, correct such return according to its best judgment and information." 35 ILCS 120/4 (West 2014). However, "[t]he statute does not

spell out any precise method of producing the corrected return." *Puleo v. Department of Revenue*, 117 Ill. App. 3d 260, 266 (1983). Hau raises a mixed question of law and fact as to whether the Department proved it complied with the statutory requirement of correcting Hau's return using "best judgment and information," which we review for clear error.

¶ 47    At the hearing, the Department did not offer live testimony from the auditor who reviewed Hau's records and calculated his additional tax liability. In lieu of her testimony, the Department submitted the narrative she had typed up and submitted regarding her procedures and findings. The narrative supported the Department's argument that the audit was performed under a minimum standard of reasonableness. The auditor's method of calculation included scheduling the containers purchased by Hau, calculating the average menu prices for items, and estimating gross sales revenue based on the number of containers used multiplied by the average sales price for that size container. This method was selected because the auditor believed that a significant number of purchase orders for higher priced items were missing. The auditor did not believe that the records did not exist or that Hau had simply purchased less meat and seafood because other purchases had remained consistent between the first time Hau was audited and this current audit. Thus, a decline in production and sales could not account for the disparity in the meat and seafood purchases over the years. Using this container method, the auditor estimated monthly sales receipts to be $34,600. We note that the narrative also discusses a second method of calculation in which the auditor reviewed the guest checks provided for June 2010 and found the receipts totalled $15,200.21. However, the auditor found that these guest checks were unreliable because there was no control for the guest checks, they were not in numerical order, and guest checks would be stapled to carryout bags and given to customers. From the estimated monthly sales receipts, the auditor was able to compare the reported figures on Hau's returns and determine the amount of underreported sales receipts and tax deficiencies due.

¶ 48    After reviewing the record, we find that the Department did not employ arbitrary or unreasonable methods to calculate the sales tax owed. The auditor attempted several methods of calculations but found that both the markup method and scheduling the guest checks were unreliable due to Hau's poor record keeping. Thus, the Department resorted to the container method.

¶ 49    In *Vitale v. Illinois Department of Revenue*, 118 Ill. App. 3d 210, 212-13 (1983), the court recognized that auditor's calculation method was driven by the taxpayer's failure to maintain adequate records. The court further determined that the method and techniques employed met the requirements of the law where they were not "designed by whim or caprice, but rather represented a studied effort to reconstruct with limited information, and much hard work, the taxpayer's business records." *Id.* Similarly here, we find that the auditor was working with limited information, which was due to the actions or inactions of the taxpayer himself, and engaged in a calculated effort to obtain the best reconstruction possible. Therefore, we find that the Director did not commit clear error in accepting the auditor's container method.

¶ 50    Hau's complaint that the auditor's testimony was necessary is undercut by previous cases that recognized the Department is not required to produce the auditor to prove up the Department's *prima facie* case. See *American Welding Supply Co. v. Department of Revenue*, 106 Ill. App. 3d 93, 99 (1982) (recognizing that statute does not require the Department to produce auditor for testimony); see also *A.R. Barnes & Co. v. Department of Revenue*, 173 Ill. App. 3d 826, 832 (1988) (noting that the auditor or someone personally familiar with the

case *may* testify). Although it may be convenient to have a fuller explanation of the procedures employed by the auditor, we find that the narrative submitted outlined her method of calculation to a sufficient degree that the Director could determine whether the method employed met a minimum standard of reasonableness.

¶ 51 Further, we reject Hau's reliance on *Grand Liquor*, which, as the court discussed in *Puleo*, 117 Ill. App. 3d at 266-67, was limited to a set of circumstances in which "the corrected return was based upon data generated by a computer." *Grand Liquor* is further distinguishable because it concerned whether hearsay evidence could be used to shore up the Department's case where the taxpayer's books and records were available. Unlike *Grand Liquor*, Hau failed to maintain adequate books and records for the audit.

¶ 52                                    3. Hau's Rebuttal

¶ 53 Having found that the Department properly established its *prima facie* case and demonstrated its assessment methods complied with minimum standards of reasonableness, we turn to Hau's contention that he factually rebutted the Department's corrected assessment. Defendant argues that the submitted income tax returns and his credible testimony were sufficient to overcome the Department's *prima facie* case.

¶ 54 The burden was on Hau to present competent evidence to show that the Department's assessment of additional tax liability was incorrect. " '[A taxpayer] may not prevail by merely saying [his] own return was correct, ***. Simply questioning the Department of Revenue's return does not shift the burden to the Department of Revenue.' " *Masini*, 60 Ill. App. 3d at 15 (quoting *Quincy Trading Post, Inc. v. Department of Revenue*, 12 Ill. App. 3d 725, 730-31 (1973)). "[The taxpayer] must produce competent evidence, identified with [his] books and records and showing that the Department's returns are incorrect." *Id.* at 15 (citing multiple cases). "The law is well-settled that a taxpayer cannot overcome the Department's *prima facie* case merely by denying the accuracy of the Department's assessments or by suggesting hypothetical weaknesses." *Smith v. Department of Revenue*, 143 Ill. App. 3d 607, 613 (1986).

¶ 55 Hau argued that the container method used by the auditor was flawed and denied the estimated sales revenue as astronomically large. However, his challenge to the Department's assessment consists simply of offering copies of his tax returns and his own testimony. These returns have little probative value as he could not testify that they were correct and he related that the returns were prepared by his accountant based on monthly summaries that he generated himself. His testimony further revealed that his accountant did not have access to the source material (*i.e.*, the sales receipts) on which the summaries were based. A taxpayer's failure to produce their records permits a negative inference that if the records had been produced, they would have reflected unfavorably on the taxpayer. *Id.*

¶ 56 We find that Hau's testimony and offered evidence amount to no more than a bare assertion that the Department's corrected returns were incorrect. Hau offered no evidence to prove the hypothetical weaknesses in the Department's methods. Although Hau estimated his daily sales revenue and testified to the impoverished nature of the neighborhood, he failed to provide any documentary support for his claim that he could not possibly meet the estimated sale revenue the auditor calculated. We have consistently found that a taxpayer's oral testimony without sufficient corroborative evidence will not rebut a *prima facie* case. *Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 217; *A.R. Barnes & Co.*, 173 Ill. App. 3d at 835;

- 11 -

*Smith*, 143 Ill. App. 3d at 613. Accordingly, we find that Hau did not factually rebut the Department's *prima facie* case and the Director did not err in her conclusions to the contrary.

¶ 57                              D. Due Process and the Fraud Penalties

¶ 58        We briefly note that neither party raised concerns, in the circuit court or in this appeal, about the Director's finding, adopted from the ALJ's recommendation, that Hau's due process rights were not violated. Thus, we do not address this issue and affirm the Director's finding as written.

¶ 59        Similarly, neither party briefed the issue of whether the fraud penalties were properly imposed. However, the Director's decision and the circuit court's judgment diverge on this issue placing this court in a unique position. Under administrative review, we consider only the administrative agency's decision rather than the judgment of the circuit court. See *Anderson*, 348 Ill. App. 3d at 560. The question remains whether we affirm the Director's imposition of the fraud penalties or, conversely, the circuit court's finding that fraud was not proven by clear and convincing evidence.

¶ 60        "[U]nder our supreme court rules, both appellees and appellants forfeit any points not argued in their initial briefs." *Amalgamated Transit Union v. Illinois Labor Relations Board, Local Panel*, 2017 IL App (1st) 160999, ¶ 59 (citing Ill. S. Ct. R. 341(h)(7), (i) (eff. Feb. 6, 2013)). We have long recognized that an appellate court will not consider a point that has not been argued, unless justice calls for it, and this rule of practice is also applicable to appeals under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). See *Village of Maywood v. Health, Inc.*, 104 Ill. App. 3d 948, 952 (1982). Historically, the effect of the dismissal of an appeal for failure of the appellant to file its brief "is an affirmance of the judgment of the trial court rendered following a judicial proceeding in which a judge has concluded that based upon the law and the facts such a judgment should be entered." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131 (1976). Although we are instructed under Administrative Review Law to consider only the agency's decision, neither party has taken issue with the fact that the Director's decision on the imposition of the fraud penalty was overturned. Thus, we find that, in this instance, it is appropriate to affirm the circuit court's judgment in its entirety, and we also reverse the fraud penalties.

¶ 61                                        III. CONCLUSION

¶ 62        For the reasons stated, we affirm the circuit court's judgment.

¶ 63        Affirmed.