2022 IL App (1st) 210635

No. 1-21-0635

Opinion filed: December 30, 2022

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARATHON PETROLEUM COMPANY LP, | ) | Appeal from the |
| f/k/a Marathon Petroleum Company LLP, | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2019 L 050614 |
| THE COOK COUNTY DEPARTMENT OF | ) | |
| REVENUE; ZAHRA ALI, as Director of the Cook | ) | |
| County Department of Revenue; and THE COOK | ) | |
| COUNTY DEPARTMENT OF ADMINISTRATIVE | ) | The Honorable |
| HEARINGS, | ) | John J. Curry Jr., |
| | ) | Judge Presiding. |
| Defendants-Appellants. | ) | |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Tailor[1] concurred in the judgment and opinion.

**OPINION**

---

[1] Oral argument was held in this case before a panel that included Justice Pierce. Justice Pierce has retired, and Justice Tailor has been assigned in his place. Justice Tailor has read the briefs and record, and he has listened to the oral argument.

¶ 1    The instant appeal arises from the circuit court's reversal of an administrative law judge's decision that upheld taxes and penalties imposed by the Cook County Department of Revenue (Department) pursuant to the Cook County Retail Sale of Gasoline and Diesel Tax Ordinance (Fuel Tax Ordinance) (Cook County Code of Ordinances § 74-470 *et seq.* (approved Feb. 6, 2011)). The Department imposed fuel taxes and penalties on Marathon Petroleum Company LP (Marathon) for book-out transactions, in which no fuel changes location and the parties' fuel inventories do not change. Marathon filed a petition seeking administrative review of the Department's tax assessments, and the administrative law judge found that Marathon's book-out transactions were taxable under the Fuel Tax Ordinance.  Hence, Marathon sought administrative review, the circuit court reversed, and this appeal followed. On appeal, the Department contends the record supports the administrative law judge's finding that the book-out transactions, though they do not involve the physical delivery of fuel, still involve the transfer of an ownership interest as to that fuel and are thus taxable sales under the Fuel Tax Ordinance. For the following reasons, we reverse the circuit court's decision, affirm in part and reverse in part the administrative law judge's decision, and remand for recalculation of the amount due without penalties.

¶ 2                                I. BACKGROUND

¶ 3                        A. Cook County Fuel Tax Ordinance

¶ 4    Fuel is a widely traded commodity, and the County of Cook taxes the sale of gasoline, diesel fuel, biodiesel fuel, and GDiesel at a retail level pursuant to the Fuel Tax Ordinance. The Department is responsible for administering and enforcing the Ordinance. The Fuel Tax Ordinance provides a unique tax collection plan. When a distributor sells fuel to a retailer located in Cook County, the distributor collects the fuel tax from the retailer and remits the tax payment to the Department. The retailer recovers the fuel tax by adding the tax price to the consumer's fuel

purchase. Similarly, when a distributor sells fuel directly to a consumer, the distributor adds the tax price to the consumer's fuel purchase.

¶ 5     The fuel tax collection plan also occurs in distributor-to-distributor transactions. If a buying distributor holds a registration certificate issued by the Department, the selling distributor does not collect the fuel tax from the buying distributor. The tax is only collected when the last distributor in the distribution chain sells the fuel to a retailer doing business in Cook County or to a consumer who purchases fuel directly from a fuel distributor for delivery in Cook County. In contrast, if a buying distributor does not hold a registration certificate, the selling distributor must collect the fuel tax from the unregistered buying distributor and remit the tax payment to the Department. If the selling distributor fails to collect the fuel tax from the unregistered buying distributor, the Department may seek the uncollected fuel tax from the selling distributor.

¶ 6                             B. Marathon's Tax Fuel Assessments

¶ 7     Marathon is a refiner of crude oil and distributes petroleum products from facilities in Mount Prospect, Argo, and Des Plaines, Illinois, all of which are municipalities located in Cook County. Marathon also holds a registration certificate issued by the Department.

¶ 8     In May 2014, the Department started an audit of Marathon's gasoline and diesel transactions occurring between January 2006 and July 2014. At the end of the audit, the Department issued two "Notices of Tax Determination and Assessment." The first notice involved Marathon's gasoline transactions and assessed $16,450,932.78 in tax, interest, and penalties. The second notice involved Marathon's diesel transactions and assessed $13,149,477.88 in tax, interest, and penalties.

¶ 9     Marathon filed a "Protest and Petition for Hearing" for each assessment and subsequently gave the Department additional documents for review. Based on the Department's review, it

amended Marathon's assessments, reducing the gasoline assessment to $4,398,180.76 and the diesel assessment to $10,537,077.16. Marathon filed a supplemental "Protest and Petition for Hearing," arguing that the assessments contained "book transfers" or "book out"[2] transactions that were not taxable sales of fuel as set forth in the Fuel Tax Ordinance.

¶ 10                                C. Administrative Proceeding

¶ 11    The case proceeded to an administrative hearing on Marathon's protest and petition for hearing. At the hearing, Dr. Gregory Arburn, Marathon's expert witness, testified that a forward contract is an agreement to deliver a product on a specific date and that a book-out transaction is one way to financially settle a forward contract "instead of delivery or making delivery" of the product. In a book-out transaction, "the parties may sell and acquire an intangible interest in a commodity." The purpose of a book-out transaction is for risk management and cost control.

¶ 12    Dr. Andria van der Merwe, the Department's expert witness, testified that a forward contract is a privately negotiated agreement between two parties that "creates an economic obligation to buy or sell a commodity" at a specific date. Specifically, on the contracting date, but before the delivery date, the parties will negotiate the terms of the contract, including the quantity of the commodity, delivery location, delivery date, and the commodity price. The parties must fulfill their obligations under the contract by either "physically delivering the commodity or by doing a cash settlement." Dr. van der Merwe stated that, based on Dr. Arburn's testimony, she understood that a book-out transaction is "the cash settlement of the forward contract" and that there is no "physical transfer of commodity, but there is a transfer of cash that is the economic equivalent of the value of the forward contract." When asked whether title of ownership transfers

---

[2]The terms "book transfer" and "book out" are used interchangeably throughout the record. Hereinafter, we refer to these transactions as book-out transactions for consistency purposes.

in a book-out transaction, Dr. van der Merwe responded, "From an economic perspective, I don't want to opine on transfer of title."

¶ 13    Mr. Jose Vega, the Department's audit supervisor, testified that he was assigned to review Marathon's revised assessments. During the audit, the Department requested Marathon's internal summary report. The report included invoices that listed the name of a seller, the name of a purchaser, the net gallons of fuel sold, and the origin and destination of the fuel. Based on these invoices, the Department determined that there were additional sales to unregistered gas distributors not listed in Marathon's tax return. According to Vega, the invoices showing that Marathon sold fuel to a buyer exemplified a transfer of ownership in the fuel.

¶ 14    Gary Michals, the Department's deputy director of compliance, testified that he oversaw the audit on the initial and revised assessments. Michals reviewed Marathon's internal summary report and found that Marathon was involved in multiple transactions with nonregistered purchasers and that these transactions occurred in Cook County. Michals testified that a transfer in ownership occurs "on a given delivery date determined by the FOB where a destination is. Then at the—at that point money is transferred into Marathon's account to conclude the sales transaction usually within a 48-hour period." He elaborated that a "[t]ransfer of ownership means a right to that given product. Doesn't necessarily have to be a physical possession."

¶ 15    Joseph Steiner, Marathon's motor fuel tax specialist, defined a book-out transaction as "a mechanism which is used to settle contracts and to remove associated obligations without physically moving or transferring any product." The difference between a book-out transaction and a transaction where fuel is sold and transferred is "the book-out transaction is simply a financial transaction" whereas a "physical transaction *** would actually mean that the product either transferred or moved and there's some kind of documentation to that effect, a meter ticket,

a bill of lading, a transfer order with a facility operator, something to evidence the fact that there's been a change in ownership or movement somewhere."

¶ 16    Matthew Freeman, Marathon's commercial analysis manager, testified to the different types of book-out transactions that Marathon employs when settling forward contracts. Freeman stated that Marathon generally uses three types of book-out transactions: direct, indirect, and distress. In a direct book-out transaction, two companies contract to sell some quantity of fuel to one another. The companies merge their contractual agreements together, financially settle the contract, and retain their own inventory rather than physically move barrels of fuel. In an indirect transaction, three or more companies enter a chain of forward contracts. There is a separate contract for each company in the chain. Ultimately, the chain of contracts come full circle and the initial company in the chain becomes the buyer and seller. Instead of fulfilling each contractual agreement between the various companies, they agree to financially settle the contracts and the initial company retains its fuel inventory.

¶ 17    In a distress book-out transaction, the selling company cannot fulfill its contractual agreement to sell a certain quantity of fuel to the buying company. The buying company agrees to enter into a subsequent contractual agreement wherein the buying company will "contract back to [the selling company] the same quantity of barrels, just a final obligation saying you're going to sell from [the buying company] back to [the selling company]." The selling company "use[s] that paperwork to say [the buying company gave] back the barrels on the original transaction. In this there's no inventory moving, no meter tickets are cut, no transfer orders are sent to the terminal." Freeman explained that the transaction is "just a financial settling." The companies do not change title and do not physically move the fuel. The buying company is not obligated to enter a book-out transaction and, instead, may seek enforcement of the contract.

¶ 18   Freeman testified to respondent's exhibit 4, a buy-sell contract between Marathon and Sunoco, and exhibit 11, an invoice for the sale of fuel that Marathon sent to Sunoco. Freeman explained that, under the buy-sell contract, Marathon agreed to sell 20,000 gallons of fuel to Sunoco. Marathon sent the payment invoice to Sunoco for payment to "settle" or "book out" the transaction. No physical transfer of the fuel occurred during the transaction.

¶ 19   The administrative law judge determined that Marathon provided insufficient evidence that its book-out transactions were not subject to the Fuel Tax Ordinance during the audit period. Specifically, Marathon failed to corroborate Freeman's testimony concerning the different types of book-out transactions with any documentary evidence of the cash settlement contracts associated with the revised tax assessment or with a representative sample of the different types of cash settlement contracts and their corresponding forward contracts. While the administrative law judge acknowledged Marathon's buy-sell contract with Sunoco, she found that Marathon failed to provide any documentary evidence "memorializing the parties' agreement to settle two forward contracts for cash and setting the terms of the settlements, particularly the price terms." Because Marathon failed to provide sufficient evidence to support its claim, the judge rejected Marathon's argument that the book-out transactions are not taxable sales of fuel subject to the Fuel Tax Ordinance.

¶ 20                              D. Circuit Court Proceeding

¶ 21   Marathon filed a complaint for review of the administrative decision in the circuit court. In his written decision, the circuit court judge found that the Department's auditing method met minimum standards of reasonableness. He also found that, even assuming the assessment was reasonable, Marathon met its burden of showing that its book-out transactions were "mere cash settlements" and not taxable sales of fuel. The circuit court judge held that the administrative law

judge's decision constituted reversible error and entered judgment in Marathon's favor. The Department appeals.

¶ 22                                    II. ANALYSIS

¶ 23                              A. Administrative Decision

¶ 24     The Department challenges the circuit court's reversal of the administrative law judge's decision. We review the administrative agency's decision, not the judgment of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009). On administrative review of an agency decision, a court may encounter three types of questions, each with different degrees of deference. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 25     An agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct, and a reviewing court will not overturn those findings unless they are against the manifest weight of the evidence. *Id.* An agency's findings on questions of law, in contrast, are not binding, and a court's review is *de novo*. *Id.* "Mixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *Id.* at 211. For mixed questions, the reviewing court reviews whether the agency's decision is clearly erroneous. *Id.* An agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.*

¶ 26                         1. The Department's *Prima Facie* Case

¶ 27     Marathon argues that the Department failed to establish a *prima facie* case that its auditing method met a minimum standard of reasonableness because (1) the Department failed to

distinguish between buy-sell transactions and book-out transactions when it audited Marathon's internal summary report and (2) the Department failed to understand the nature of book-out transactions by ignoring Marathon's documents during the audit and adopting its own interpretation of the transactional record. The Department argues that it did not fail to make a distinction between the two types of transactions but that forward contracts, even if they are later "booked out," still constitute taxable sales of fuel under the Fuel Tax Ordinance.

¶ 28    Section 34-64 of the Cook County Code of Ordinances states that "[a]ny tax determination and assessment, or amended tax determination and assessment, shall be deemed *prima facie* correct and the burden shall be on the person assessed to prove the contrary." Cook County Code of Ordinances § 34-64(b)(2) (approved Feb. 16, 2011). If the taxpayer challenges the method employed by the Department to calculate the amount of tax due, then the record must show that the techniques and assumptions that the Department used met some minimum standard of reasonableness. *Chak Fai Hau v. Department of Revenue*, 2019 IL App (1st) 172588, ¶ 46.

¶ 29    We begin our review of the Department's method by first examining the relevant provisions of the Fuel Tax Ordinance. Section 74-472 of the Fuel Tax Ordinance imposes a tax on the retail sale of gasoline, diesel fuel, biodiesel fuel, and GDiesel fuel on a distributor or supplier. Cook County Code of Ordinances § 74-472(a) (approved Feb. 16, 2011). Section 74-472(c)(3) provides that the tax levied "shall be collected by each distributor or supplier who sells gasoline, diesel fuel, biodiesel fuel, or gdiesal [*sic*] fuel to *** [a]nother Gas Distributor doing business in the County that is not holding a valid registration certificate." *Id*. § 74-472(c)(3). Section 74-471 of the Fuel Tax Ordinance defines "Sale, resale, and selling" as "any transfer of ownership or possession or both, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever." *Id*. § 74-471.

¶ 30    Considering these provisions, the record shows that the Department's auditing method met a minimum standard of reasonableness. Vega audited Marathon's books and records pertaining to the revised assessment. During the audit, Vega reviewed the internal summary report, along with additional contracts, invoices, and documents provided by Marathon. Based on this information, Vega identified multiple sales transactions between Marathon and distributors unregistered with the Department. Vega determined that the transactions constituted sales because the report listed Marathon as the seller, a purchaser company that was not listed as a registered Cook County distributor, the gallons of fuel sold, and the origin and destination of that fuel was in Cook County.

¶ 31    Michals reviewed audits on the initial and revised assessments. He reviewed Marathon's internal summary report and entered the names of all the companies involved in transactions with Marathon into the Department's fuel registration database to determine whether the company was a registered distributor. Michals found that there were multiple sales transactions that occurred between Marathon and a company that was not listed in the registration database. He calculated the amount of fuel sold to the unregistered companies and generated the revised tax assessments. In light of Vega's and Michals's testimonies, we find that the Department's method was reasonable despite Marathon's assertion that the Department failed to adopt its interpretation of a book-out transaction. Accordingly, we hold that the Department established a *prima facie* case.

¶ 32            2. Marathon's Rebuttal to the Department's *Prima Facie* Case

¶ 33    Next, we consider Marathon's alternative argument that it overcame the Department's *prima facie* case by presenting rebuttal evidence that its book-out transactions were not subject to the Fuel Tax Ordinance. The Department contends that Marathon did not meet its burden because it failed to present evidence "consistent, probable, and identified with" its books and records showing that the Department's revised assessment was incorrect.

¶ 34    The burden is on Marathon to present "competent evidence to show that the Department's assessment of additional tax liability was incorrect." *Chak Fai Hau*, 2019 IL App (1st) 172588, ¶ 54. "[A taxpayer] may not prevail by merely saying [his] own return was correct,***. Simply questioning the Department of Revenue's return does not shift the burden to the Department of Revenue." (Internal quotation marks omitted.) *Id.* The taxpayer must present " 'competent evidence, identified with *** books and records showing that the Department's returns are incorrect.' " *Id.* (quoting *Masini v. Department of Revenue*, 60 Ill. App. 3d 11, 15 (1978)); see also *PPG Industries, Inc. v. Department of Revenue*, 328 Ill. App. 3d 16, 34 (2002) ("a taxpayer *** must present sufficient documentary support for its assertions" (internal quotation marks omitted)). " 'The law is well-settled that a taxpayer cannot overcome the Department's *prima facie* case merely by denying the accuracy of the Department's assessments or by suggesting hypothetical weaknesses.' " *Chak Fai Hau*, 2019 IL App (1st) 172588, ¶ 54 (quoting *Smith v. Department of Revenue*, 143 Ill App. 3d 607, 613 (1986)).

¶ 35    Here, the administrative law judge acknowledged that Marathon presented testimony on the nature and types of book-out transactions Marathon used to settle its forward contracts. The administrative law judge, however, found that Marathon failed to corroborate that testimony with documents demonstrating that book-out transactions actually occurred. We find this focus to be somewhat misplaced. The question here is not whether book-out transactions occurred, but how forward contracts with corresponding book-out transactions should be treated for tax purposes. Marathon's position is that no taxable event occurs because the act of "booking out" forward contracts before delivery is a purely financial transaction involving no actual transfer of an ownership interest in fuel. This understanding is contradicted not only by how the relevant terms

are used in the field of commodities trading but also by the testimony of Marathon's own witnesses.

¶ 36    The Department invites us to take judicial notice of the definitions used in the PriceWaterhouseCoopers "Glossary of terms used in the trading of oil and gas, utilities and mining commodities." See PriceWaterhouseCoopers, Energy, Utilities & Mining Glossary, https://www.pwc.com/gx/en/energy-utilities-mining/pdf/eumcommoditiestradingriskmanagementglossary.pdf (last visited Dec. 16, 2022) [https://perma.cc/A7AS-ZK5T]. There, "[f]orward buying" is defined as "[t]he acquisition of energy or related services in advance of need." *Id*. at 52. Unlike a "[f]utures contract," in which "the seller doesn't sell the commodity until the date on the contract" (*id*. at 55), a "[f]orward'' contract is the present sale of a commodity "that will be delivered to the buyer at a specified time in the future." *Id*. at 52. A "[b]ook" is "[t]he total of all forward positions held by a trader or company," and a "[b]ook transfer" or "book out" is "[t]he transfer of title of a cash commodity to the buyer without a corresponding physical movement." *Id*. at 13. As both the glossary and Marathon's expert, Dr. Arburn, note, futures contracts are regulated by the Commodity Futures Trading Commission (CFTC); forward contracts, like the ones at issue here, are not.

¶ 37    These definitions align with Marathon's own internal documentation and the testimony of its witnesses in these proceedings. Exhibit 4, referenced above, implicitly recognizes that delivery on a forward contract may take place "by book transfer." Dr. Arbun agreed that a book-out transaction can involve the acquisition of "an intangible interest in a commodity." Mr. Freeman likewise explained that in a book-out "I have the barrels, you gave them to me essentially," and "I'm going to give them back to you," although "[w]e're not going to move them anywhere." We find that under section 74-471 of the Fuel Tax Ordinance—which broadly defines the sale of fuel

as "any transfer of ownership or possession or both *** by any means whatsoever" (Cook County Code of Ordinances § 74-471 (approved Feb. 6, 2011))—the transfer of that intangible ownership interest is enough to make these transactions taxable.

¶ 38    Although not commented on by the parties, we note, as further persuasive support for this understanding, the apparently longstanding treatment of book transfers as taxable sales by the Illinois Department of Revenue (IDOR). When asked, for example, whether the Illinois prepaid sales tax would be owed "on book transfers of motor fuel with a non-licensed distributor or supplier," which involved "the passing of title to product among several parties without moving the product," the IDOR responded in a June 1, 1987, opinion letter that, based on this limited information, the tax would indeed be owed. Ill. Dep't of Revenue Letter Ruling No. 87-0396 (June 1, 1987), 1987 WL 53530. When asked more recently about book transfers in the uranium market, the IDOR noted in a 2011 private letter ruling that a company purchasing uranium in book entry form for eventual resale could sell, swap, or trade the uranium during that time (though the uranium itself remained in the possession of a second company at that company's secure facility) and thus qualified as a "dealer" under the Illinois Income Tax Act. Ill. Dep't of Revenue Private Letter Ruling No. IT 11-0003-PLR (Nov. 18, 2011), https://tax.illinois.gov/content/dam/soi/en/web/tax/research/legalinformation/letterrulings/it/documents/2011/it-11-0003-p.pdf [https://perma.cc/8H23-4BVP].

¶ 39    Based on the foregoing, we agree with the administrative law judge's determination that Marathon failed to rebut the Department's *prima facie* case that the transactions at issue here were taxable sales under the Fuel Tax Ordinance.

¶ 40                      B. Marathon's Alternative Arguments

¶ 41    Marathon additionally argues that the Fuel Tax Ordinance, as applied to book-out transactions, impermissibly imposes an occupation tax on fuel distributors in violation of the Illinois Constitution. The Illinois Constitution authorizes a home rule unit, such as Cook County, to exercise any power and perform any function pertaining to its government and affairs. Ill. Const. 1970, art. VII, § 6(e). A home rule unit only has "the power that the General Assembly may provide by law *** to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." *Id.* The General Assembly has enumerated certain instances where a home rule unit is permitted to impose an occupation tax; however, a tax on fuel distributors is not one of these exceptions. See 55 ILCS 5/5-1009 (West 2020). Thus, as Marathon argues, it generally would be impermissible for the Department to impose an occupation tax under the circumstances in this case.

¶ 42    Here, however, the fuel tax ordinance does not impose an impermissible occupation tax on fuel distributors that engage in book-out transactions. In her decision, the administrative law judge rejected Marathon's argument that no retail sale, *e.g.*, the taxable sale of fuel to consumers or end users, occurred in book-out transactions. The administrative law judge found that Marathon failed to establish that the fuel associated with its book-out transactions could never be sold at retail and that the tax will never be imposed on the consumer or end user.

¶ 43    Moreover, to the extent that Marathon challenges the Fuel Tax Ordinance's collect-and-remit plan between two distributors, our supreme court held that similar collect-and-remit plans do not impose an occupation tax. See *Mulligan v. Dunne*, 61 Ill. 2d 544, 551-52 (1975); *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56 (1972). Thus, we hold that the administrative law judge did not err in finding that the Fuel Tax Ordinance did not impose an occupation tax in violation of the Illinois Constitution.

¶ 44    Next, Marathon contends that the Department erroneously held that the Fuel Tax Ordinance applied to book-out transactions that did not occur within Cook County. Marathon asserts that this application constitutes an extraterritorial tax in violation of the Illinois Constitution. Marathon also argues that its book-out transactions have no nexus with Cook County and, therefore, violate the due process clauses of the United States and Illinois Constitutions (U.S. Const. amend. V; Ill. Const. 1970, art. I, §2). Marathon specifically refers to the Department taxing its transactions labeled "F.O.B. Chicago, IL" despite Marathon having no fuel storage facilities in Chicago and the fact that no sale, as defined by the Fuel Tax ordinance, occurred in Cook County. To support its argument, Marathon relies on *Hertz Corp. v. City of Chicago*, 2017 IL 119945.

¶ 45    In *Hertz*, the City of Chicago sought to enforce a tax ordinance that required suburban vehicle rental companies within three miles of the City's borders to collect taxes on Chicago residents who rented vehicles. *Hertz Corp.*, 2017 IL 119945, ¶ 5. Our supreme court found that the tax was based on the mere presumption that residents will drive the vehicle in Chicago when, in fact, there was no evidence of such occurrence. *Id.* ¶ 30. Consequently, the court held that the tax had an extraterritorial effect and, therefore, was beyond the City's home rule powers. *Id.* ¶ 31.

¶ 46    We find *Hertz* inapplicable here given the procedural posture of this case. The Fuel Tax Ordinance requires a selling distributor to collect taxes from "[a]nother Gas Distributor *doing business in the County* that is not holding a valid registration certificate." (Emphasis added.) Cook County Code of Ordinances § 74-472(a)(3) (approved Feb. 16, 2011). The administrative law judge held that Marathon failed to produce evidence that the companies it contracted with did not do business as distributors of fuel in Cook County. In fact, as the administrative law judge found, one of the companies that was a party to Marathon's book-out transactions, Phillips 66, registered

with the Department as a Cook County distributor within the audit period indicating that, at some point, Marathon sold fuel to an unregistered distributor doing business in Cook County.

"In examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. Instead, a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence. An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident." *Cinkus*, 228 Ill. 2d at 210.

¶ 47    Here, we find the agency's factual determinations are not against the manifest weight of the evidence, and we find the facts satisfy the statutory standard such that the rule of law as applied to the established facts has not been violated. We are not left with the definite and firm conviction that a mistake has been made. Thus, we decline to extend *Hertz* to this case because Marathon failed to show that it did not conduct book-out transactions with unregistered distributors that were doing business in Cook County and thereby demonstrate that its book-out transactions had no connection to Cook County. Accordingly, we do not find the decision of the agency to be clearly erroneous. *Id.*

¶ 48    Finally, Marathon argues the Department should not have imposed penalties in addition to the taxes and interest imposed in the revised tax assessment. Cook County's Uniform Penalties, Interest, and Procedures Ordinance provides:

"If the Director determines that the taxpayer or tax collector had reasonable cause

for any of the following:

(1) Paying late;

(2) Remitting late;

(3) Underpaying the applicable tax;

(4) Filing a late or incomplete tax return; or

(5) Filing a late or incomplete remittance return, the applicable penalty shall be waived." Cook County Code of Ordinances § 34-68(c) (amended Dec. 17, 2014).

The ordinance echoes section 3-8 of the Uniform Penalty and Interest Act, which similarly permits abatement of penalties when the taxpayer shows reasonable cause for failing to pay the taxes. 35 ILCS 735/3-8 (West 2020). Additionally, the Administrative Code provides:

"The determination of whether a taxpayer acted with reasonable cause shall be made on a case by case basis taking into account all pertinent facts and circumstances. The most important factor to be considered in making a determination to abate a penalty will be the extent to which the taxpayer made a good faith effort to determine his proper tax liability and to file and pay his proper liability in a timely fashion." 86 Ill. Adm. Code 700.400(b) (2019).

See *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶ 46.

¶ 49 Our supreme court's decision in *Horsehead Corp.* provides guidance on this issue. There, the Illinois Department of Revenue imposed late payment and late filing penalties against Horsehead Corporation (Horsehead) for failing to pay a use tax. *Horsehead Corp.*, 2019 IL 124155, ¶¶ 4, 45. The court found that Horsehead had reasonable cause for failing to pay the use tax because, *inter alia*, the use tax exemption, which Horsehead argued was applicable to its case, had no statutory definition and no caselaw that Horsehead could rely on for guidance as to how the exemption is interpreted and applied. *Id.* ¶ 51. The court held that, therefore, the imposition of penalties was against the manifest weight of the evidence. *Id.* ¶ 52.

¶ 50    Here, as in *Horsehead*, the taxpayer's decision not to pay the taxes resulted from a reasonable interpretation of the law. No prior Illinois case established the taxability of book-out transactions as sales. Because no product changes hands and no inventories change, the transaction in some respects appears not to include any sale. We find that under the circumstances of this case, the decision to affirm the imposition of penalties is contrary to the manifest weight of the evidence. See *Horsehead*, 2019 IL 124155, ¶ 46. We remand the case to the Cook County Department of Administrative Hearings for redetermination of the debt without the imposition of penalties. In all other respects, we affirm the administrative law judge's decision.

¶ 51                                  III. CONCLUSION

¶ 52    The administrative law judge did not err in upholding the revised tax assessment on the imposition of taxes and interest. However, Marathon showed reasonable cause for its failure to pay the taxes at the time of the sales, so the Department improperly imposed penalties on Marathon. We affirm the administrative law judge's decision insofar as the decision requires the payment of taxes, but we reverse the decision to impose penalties, and we remand for recalculation of the amount due.

¶ 53    Circuit court judgment reversed; Department decision affirmed in part and reversed in part; cause remanded.

---

***Marathon Petroleum Co. v. Cook County Department of Revenue*,
2022 IL App (1st) 210635**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-050614; the Hon. John J. Curry Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Marie D. Spicuzza, Paul L. Fangman, and Jonathon D. Byrer, Assistant State's Attorneys, of counsel), for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | David W. Machemer and Marilyn A. Wethekam, of Horwood Marcus & Berk Chtrd., of Chicago, for appellee. |

---